# Staunton

## Louis D. Georgeton v. H. W. Reynolds.

September 21, 1933.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*R. O. Crockett,* for the plaintiff in error.

*J. Powell Royall, John T. DeHart* and *Henry Roberts,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

This is an action to recover an amount due on account of rent and taxes which a lessee is charged with having assumed. There was a judgment for the plaintiff.

On January 31, 1920, Raymond Spurgeon and wife leased to H. W. Reynolds, for twenty years, certain valuable real estate in the city of Bristol. For the first ten years he was to pay in monthly installments an annual rental of $2,700. For the second ten years he was to pay in like manner annually $3,750. He also agreed to pay "all taxes and assessments State and city against said property." On June 26, 1923, Dr. Reynolds sublet this holding to Louis D. Georgeton, a Greek, subject to an exception of no importance here. He transferred to Georgeton all of his rights under the Spurgeon lease, and Georgeton assumed all the obligations of Reynolds to Spurgeon. As a further consideration Georgeton agreed

to pay $2,000 in cash, $2,000 on January 1, 1924, $1,000 on April 1, 1924, $1,000 on July 1, 1924, $1,000 on October 1, 1924, $1,000 on January 1, 1925, $1,000 on April 1, 1925, and $1,000 on July 1, 1925. That is to say, Georgeton in substance paid $10,000 for the Reynolds lease. It was further provided that if he failed to pay the rent assumed Reynolds might, at his option, declare the lease cancelled and repossess himself of this property. Rent was to be paid not directly to Spurgeon but to Reynolds, who was to turn it over to the owner in accordance with the terms of the original lease.

Georgeton appears to have paid the $10,000 indebtedness called for by his lease and thereafter this contract was executed:

"THIS RELEASE CONTRACT, made and entered into on this the 4th day of January, 1926, by and between H. W. REYNOLDS, party of the first part and LOUIS D. GEORGETON, party of the second part.

WITNESSETH:

"THAT WHEREAS, on the 26th day of June, 1923, H. W. REYNOLDS conveyed unto LOUIS D. GEORGETON a certain lease contract of the party of the first part from Raymond Spurgeon and wife, dated January 31, 1920, and of record in the clerk's office in Bristol, Virginia, for the consideration of ten thousand dollars ($10,000), two thousand dollars ($2,000) of which was paid in cash, and the balance represented by notes, as follows:

"$2,000 due and payable on January 1, 1924.
"$1,000 due and payable on April 1, 1924.
"$1,000 due and payable on July 1. 1924.
"$1,000 due and payable on October 1, 1924.
"$1,000 due and payable on January 1, 1925.
"$1,000 due and payable on April 1, 1925.
"$1,000 due and payable on July 1, 1925.

"Said notes bearing interest from the first day of July, 1923.

"The lease contract, above mentioned, which was transferred subject to its terms, beginning as of July 1, 1923, ends January 31, 1940.

"And WHEREAS, H. W. REYNOLDS was the true and lawful owner of the indebtedness secured by said notes above, and all of same now have been satisfied and paid in full.

"Now, THEREFORE, in consideration of the premises, the said party of the first part does hereby release all right, claim and interest that he may have in the above mentioned lease contract, EXCEPT that the said party of the second part is to pay to the said party of the first part, as stipulated in the aforementioned lease from the party of the first part to the party of the second part, all payments called for in the original lease from Raymond Spurgeon and wife, to H. W. Reynolds, and the party of the first part, in turn, is to turn the said payments over to Raymond Spurgeon.

"WITNESS the signature of the party of the first part, hereunto affixed, this the day and year first herein written.

"H. W. REYNOLDS   (Seal)."

On March 1, 1926, Georgeton sublet this property to the Lynch Realty Corporation which undertook to "assume all obligations of the said Louis D. Georgeton under the aforesaid contract of H. W. Reynolds." At the time of the lease to the realty corporation, Georgeton went to Dr. Reynolds and told him about it and showed him the contract, whereupon Reynolds said: "He said that it was fine, that I sold it to the Lynch Realty Corporation, because they were rich corporation, and to tell them to pay me the rents, and I look after the rents and make them pay taxes and I will release you."

Georgeton further testified:

"Q. What did you say or reply when Dr. Reynolds told

you he would collect the taxes and make them pay the rents and release you?

"A. He told me he make a contract and I could go the next day and get it, and I went the next day.

"Q. How is that?

"A. He said he would have a contract drawn—get the stenographer to draw contract, and for me to go the next day and get it, and that—

"Q. Do you mean that Dr. Reynolds there told you that he would have a contract drawn by a stenographer or a girl?

"A. Yes, sir; the girl that work there.

"Q. And for you to come back the next day and get it?

"A. Yes.

"Q. Did you go back?

"A. I went the next day. He didn't have it drawn, and I went two days after and he was away.

"Q. Where did he go? You went back to see him the next day and two days after you found him gone. Did you hear where he had gone?

"A. The girl told me he gone to Florida somewhere.

"Q. After that where did you go?

"A. After he told me he release me and I was sure he would collect the rents and look after the taxes I thought I was free. I didn't have nothing to do at Bristol and I went to West Virginia and went in business at Welch, West Virginia.

"Q. From the time you made that contract there March 1, 1926—

"A. March 1, 1926.

"Q. March 1, 1926, from the time that you made that contract with Lynch Realty Corporation on March 1, 1926, when did you first learn that Dr. Reynolds had not been paying taxes?

"A. I first learned about September, 1931.

"Q. September of 1931?

"A. Yes, sir; six years afterwards.

"Q: Nineteen hundred and twenty-six to nineteen hundred and thirty-one?

"A. Yes, sir; over five years, six years.

"During that six years or that five and one-half years, tell the jury whether or not you collected any of the rents or saw to that property in any way?

"A. No, I never collected no rents. I was under the impression that I was released. I never heard anything from it for all that time. I never heard anything from Dr. Reynolds to let me know by letter that I was responsible, that he didn't release me, or anything, or that I was obligated in any way for the rents or for the taxes."

The realty corporation afterwards fell upon evil days. Taxes were unpaid but Georgeton heard nothing about conditions until he received this letter:

"BRISTOL, VA.-TENN.
"September 9, 1931.

"Mr. Lewis D. Georgeton,
"Tazewell, Virginia.

"Dear Sir:

"Mr. Lynch of the Lynch Realty Company, to whom you leased the Spurgeon Building on State street, is now behind two years taxes. We are unable to do anything towards getting him to pay. Mr. Spurgeon has been to see me and wants us to bring suit for same. I, in turn, will have to sue you as you are sub-leaser under me.

"It will perhaps be best to employ only *one* lawyer and bring one suit for all three parties, then you, Spurgeon and myself sue the Lynch Realty Company.

"I wonder if it will be agreeable for you to come over here and bring your lease and we take this matter up with Lynch before he gets another year behind. In case it is not convenient for you to make the trip over, will you please have *your lease copied* and a *copy sent registered* to me at the above address.

"Yours very truly,
"H. W. REYNOLDS."

In answer to it Georgeton went to Bristol to see Reynolds and said to him that he thought he had been released. Reynolds said that there had been no release but that "the best for us is to bring a suit, the three of us, Mr. Spurgeon and myself, and we get Mr. DeHart and we bring a suit and all go in equal for expense." Costs were actually paid by Dr. Reynolds.

Notice of motion for judgment was filed by Georgeton against the Lynch Realty Corporation, which motion reads:

"To Lynch Realty Corporation, a corporation organized and existing under the laws of the State of Virginia:

"You are hereby notified that on the 7th day of December, 1931, at 9 A. M., of that day or so soon thereafter as can be heard, that being the first day of the December term, 1931, I shall move the Corporation Court for the city of Bristol, Virginia, for a judgment against you for the sum of two thousand three hundred ninety-two and fifty-one hundredths ($2,392.51) dollars, with interest thereon until paid, the same being due to me from you as evidenced by a certain contract of date March 1, 1926, a copy of which is hereto attached, which said debt is due me from you by reason of the provisions of said contract, wherein you became obligated to pay the taxes for the year 1926 and thereafter on the property described in said contract, and you have not paid said taxes for the year 1929, which amounts to one thousand two hundred twenty-seven and forty-nine hundredths ($1,227.49) dollars, nor for the year 1930, which amounts to one thousand one hundred sixty-five and two hundredths ($1,-165.02) dollars.

"Given under my hand this the 15th day of October, 1931.

"LOUIS D. GEORGETON."

A judgment was obtained, but it is still unpaid and will probably remain unpaid.

On March 18, 1932, Reynolds filed his motion for judgment against Georgeton. In it is this itemized claim:

"Taxes due city of Bristol, Virginia, on real estate in the name of Mary Spurgeon Estate for the year 1929, $1,030.40, penalty thereon, $105.61, interest to February 15, 1932, $114.20 — $1,250.21

"Taxes due city of Bristol, Virginia, on real estate in the name of Mary Spurgeon Estate for the year 1930, $1,030.40, penalty thereon, $105.61, interest to February 15, 1932, $46.04 — 1,182.05

"Taxes due city of Bristol, Virginia, on real estate in the name of Mary Spurgeon Estate for the year 1931, $899.60, penalty thereon, $44.98 — 944.58

"Balance of rent due on said real estate, December, 1931, hereinafter described, in contracts hereafter mentioned — 205.00

"Rent due on said real estate January, 1932, hereinafter described in contracts hereafter mentioned — 312.50

"Rent due on said real estate, February, 1932, hereinafter described in contracts hereafter mentioned — 312.50

"Costs paid by undersigned at your special instance and request in case of *Georgeton* v. *Lynch Realty Company* — 8.00

"Total — $4,214.85"

At the trial all evidence for the defendant as to the release by Dr. Reynolds was stricken out.

A jury then returned a verdict for the plaintiff in the sum of $1,393.03. That verdict was, upon his motion, set aside, and a judgment for the plaintiff in the sum of $4,179.10 was entered by the court. It is now before us on a writ of error.

Since evidence as to the release of Georgeton by Dr. Reynolds was stricken out, Georgeton's evidence as to this release, for the purposes of this appeal, must be taken as true. So considered such a release is plainly proven. That fact having been established, we are concerned only with its validity.

In substance, Reynolds told Georgeton that he need

no longer concern himself with the collection of rents or with the payment of taxes, that he, Reynolds, would attend to those matters, and he did, as a matter of fact, continue to collect these rents for five or six years. Georgeton was to do nothing. He was released from pre-existing duties, but undertook no new ones, and so the contract relied upon was unilateral. *Rease* v. *Kittle,* 56 W. Va. 269, 49 S. E. 150; *Winders* v. *Kenan,* 161 N. C. 628, 77 S. E. 687.

▮ All of these contracts were under seal and were therefore supported both constructively and actually by valuable considerations.

▮ A release not under seal requires the support of a valuable consideration. *The Ferries Co.* v. *Brown,* 121 Va. 13, 92 S. E. 813; *Northwestern Nat. Insurance Co.* v. *Cohen,* 138 Va. 177, 121 S. E. 507; *Charleston Lumber Co.* v. *Friedman,* 64 W. Va. 151, 61 S. E. 815; *Bays* v. *Johnson,* 80 W. Va. 559, 92 S. E. 792; Anson on Contracts, section 404; 23 R. C. L. p. 379; 34 Cyc. pp. 1046, 1048.

▮ In England it appears that a consideration is not necessary to support an agreement to discharge a unilateral simple contract, and this view has been entertained by some of our courts (see *Hathaway* v. *Lynn,* 75 Wis. 186, 43 N. W. 956, 6 L. R. A. 551); but the plain weight of authority is to the effect that a contract under seal requires some consideration in order to relieve a party bound. We have been cited to *Richmond Leather Mfg. Co.* v. *Fawcett,* 130 Va. 484, 107 S. E. 800, but that case merely held that waivers of prompt delivery acquiesced in did not justify cancellation. It did hold that a purchaser who told the seller that if he continued to ship there would be no lawsuit, was not bound by a promise not to sue.

▮ A waiver or release, however, without consideration may sometimes be sufficient when one has thereby been induced to alter his position to his prejudice. "In order for there to be an estoppel by conduct, the party sought to be estopped must have caused the other party

to occupy a more disadvantageous position than that which he would have occupied except for that conduct." *Atlantic Coast Line R. Co.* v. *Bryan,* 109 Va. 523, 65 S. E. 30, 31; *Terry* v. *McClung,* 104 Va. 599, 52 S. E. 355; *Rorer Iron Co.* v. *Trout,* 83 Va. 397, 410, 2 S. E. 713, 5 Am. St. Rep. 285.

■ These leases ran until 1940. After Reynolds in 1923 told Georgeton that he need no longer concern himself about the payment of rent and taxes, Georgeton, as we have seen, went to West Virginia, deeming himself secure under the release promised him and was not disturbed for five or six years. He might have gone to Sparta to live until the lease was out. He would have been immensely surprised upon returning to find that matters had been allowed to drift and that there had been piled up against him an indebtedness of many thousand dollars. Had he realized the peril of continued liability he might have taken steps to see that tenants paid their rent, and that Reynolds' claim, and, through him, Spurgeon's claim, therefor was satisfied.

■ "Cases may be suggested, however, where the promisor should clearly be held discharged. Suppose the promisee informs the promisor that performance will not be required, and relying on this the promisor is not ready to perform at the day, or has so altered his position that he cannot perform at all. Though promissory estoppel is not ordinarily a substitute for consideration, justice demands that in the cases supposed the promisee should not be allowed to hold the promisor liable for his nonperformance." Williston on Contracts, section 1831.

For another reason there can be no judgment for taxes. The lease of June 26, 1923 bound Georgeton to pay to Reynolds "all payments called for in said original lease from Spurgeon and wife to H. W. Reynolds." He was not required to pay taxes to Reynolds, although he did bind himself to pay "all rents due thereunder (the lease from Spurgeon) when due together with the payment of insurance and taxes."

In the release from Reynolds to Georgeton of January 4, 1926, Georgeton was released from all obligations under his lease "Except that the said party of the second part is to pay to the said party of the first part, as stipulated in the aforementioned lease from the party of the first part to the party of the second part, all payments called for in the original lease from Raymond Spurgeon and wife to H. W. Reynolds, and the party of the first part, in turn, is to turn the said payments over to Raymond Spurgeon."

This release was prepared by Reynolds and is therefore to be construed against him. It is under seal and imports consideration. Georgeton, who had paid his $10,000 bonus, was released from everything except payments called for in the lease from Spurgeon to Reynolds.

It is true that taxes were among the payments called for in that lease. What payments under the release did Georgeton have to make? The release tells us what they were. They were "all payments called for in the original lease from Raymond Spurgeon and wife to H. W. Reynolds, and the party of the first part in turn is to turn said payments over to Raymond Spurgeon." These payments were to be made to Reynolds who was "to turn the said payments over to Raymond Spurgeon." Payments here referred to are payments on account of rent. It would be roundabout and unusual to require Georgeton to pay taxes to Reynolds that Reynolds might turn that collection over to Spurgeon in order that Spurgeon himself might actually take up overdue tax tickets. If it be conceded that Georgeton was bound to ultimately pay these taxes he was bound to pay them to the city of Bristol and not to Reynolds, who though bound for taxes was not bound to pay them directly to Spurgeon.

It is also true, as we have seen, that Georgeton did, in October, 1931, sue the Lynch Realty Corporation, and that might be construed as an acknowledgment of liability but for the fact that Reynolds induced him to do this and promised to pay a part of the court costs.

What Georgeton has said about the release made

when his lease to the Lynch Realty Corporation was executed Reynolds denies. That is an issue which should. have been submitted to the jury. Georgeton's testimony, for reasons heretofore indicated, we have been forced to disregard. The jury will consider it upon a new trial.

It follows that this case should be, and it is, reversed and remanded.

*Reversed and remanded.*

CAMPBELL, C. J., dissenting.