STATE *ex rel.* L. L. ASHWORTH AND DORA ASHWORTH

*v.*

THE STATE ROAD COMMISSION OF WEST VIRGINIA,
A CORPORATION, AND BURL A. SAWYERS, STATE
ROAD COMMISSIONER OF WEST VIRGINIA

(No. 12169)

Submitted May 1, 1962.          Decided December 4, 1962.

*David D. Ashworth,* for relators.
*Benjamin A. Ritchie,* for respondents.

CAPLAN, JUDGE:

In this original proceeding in mandamus the petitioners, L. L. Ashworth and Dora Ashworth, his wife, seek a writ from this Court to compel the respondents, The State Road Commission of West Virginia, a Corporation, and Burl A. Sawyers, state road commissioner, to institute and prosecute to conclusion against the petitioners a proceeding in eminent domain for the purpose of having ascertained and determined the damages which petitioners claim they have sustained by the alleged taking of certain vested property rights.

The petition was filed on February 13, 1962, and on April 2, 1962, this Court issued a rule returnable May 1, 1962. On May 1, 1962, this proceeding was submitted for decision upon the petition; upon the answer filed by the respondents; and upon the written briefs filed and oral arguments presented in behalf of the respective parties.

For the purposes of this proceeding it is admitted that the petitioners were the owners of two contiguous tracts of land situate in Browns Creek District, McDowell County. These tracts contained 16.44 acres and 4.25 acres respectively, and were used for general farm purposes and timber growing. A residence occupied by a tenant of the petitioners was situate thereon. These tracts were close to schools and churches, and access therefrom to the City of Welch was available by means of an old road leading from the tenant's residence to the public streets of Welch.

By deed dated August 23, 1954, the petitioners conveyed to the state road commission a certain strip or parcel of land containing 1.58 acres. It is undisputed that this 1.58 acre parcel was taken partly from the 16.44 acre tract and partly from the 4.25 acre tract. The deed provided that the land was conveyed "for the purpose of building, constructing and maintaining a highway over, across and upon the same, together with the right of the party of the second part * * * to enter upon, construct and maintain a highway over, across and upon the property of the parties of the first part * * *." Also conveyed was an easement for the construction of slopes in cuts and fills, and drainage where necessary. Of further pertinence in this case was a provision in the deed whereby the petitioners released the commission "from any and all claims for damages that may be occasioned to the residue of the lands of the parties of the first part by reason of the construction and maintenance of a state road over, upon and under the tract or parcel of land herein conveyed". The consideration paid to the petitioners for this conveyance was $500.00.

Subsequent to this conveyance, the state road commission constructed a road over and upon the 1.58 acre tract. This road was to be known as the Welch By-Pass and was a part of U. S. Route No. 52. The date upon which the construction of this road was completed is somewhat indefinite, but it was stated by the respondents in their answer that it was opened for use by the public in the latter part of 1957.

The controversy in this proceeding concerns the classification by the state road commission of this highway as a controlled-access facility. At no time and in no manner, from the commencement of the construction of this road through the time of its completion, was it designated by the state road commissioner as a controlled-access highway. It is alleged by petitioners, and admitted by respondents, that the records in the office of the Clerk of the County Court of McDowell County fail to disclose, by maps, orders or otherwise, that this new portion of U. S. Route No. 52 was intended to be a controlled-access highway.

In November, 1959, the petitioners began to improve the private road leading through their properties, and expressed a desire to construct a gasoline service station and restaurant on the northwest portion of their land abutting on the 1.58 acre tract. They were notified by the state road commission that they had no right of access to and from their properties abutting on the 1.58 acre right of way. Thereafter, the petitioners filed a petition with the commission requesting the right of access or, in the alternative, that the respondents institute a proceeding in eminent domain "to acquire the right of non-access through said properties of petitioners".

On January 8, 1960, the state road commissioner entered an order designating the road in question a controlled-access facility. An examination of the record of this proceeding does not disclose that this order was recorded or published in any manner, or that the petitioners were notified or knew of its entry.

It is the position of the petitioners that they did not convey to the respondents their right of access to their property; that the recently constructed road was a conventional highway, no notice otherwise having been given or made available to them; that the deed of August 23, 1954, contained no language indicating that the road was to be a controlled-access facility; that they could not have conveyed their right of access for the reason that when the deed was executed the statutory authority permitting the commissioner to control the access to streets and highways was not then in existence; that the respondents took from the petitioners their right of ingress and egress, a vested property right, without paying just compensation therefor; and that the petitioners are without remedy, other than by this proceeding in mandamus, to rectify the wrongs committed against them.

The respondents contend that the petitioners were adequately compensated for the 1.58 acre tract of land; that by virtue of the release in the deed the petitioners relinquished all rights in said land, including the right of access to and from the abutting property; that in view of the rugged ter-

rain and the design of the new highway it should have been obvious to the petitioners that such highway would be one of controlled-access; and that if denial of vehicular access to the petitioners did result in compensable damage, their right to recover is barred by the provisions of Code, 55-2-12, as amended.

The petitioners have received payment, through a voluntary conveyance by deed, for the land over which this highway was constructed. What then is the nature of the claim asserted here? They are ultimately seeking compensation for the alleged loss of access to the remainder of their property.

It is well established that the right of access to and from a public highway is one of the incidents of ownership or occupancy of land abutting thereon. It is appurtenant to the land and constitutes a property right of which the owner can not be deprived without just compensation. *Dick* v. *City of Hinton*, 109 W. Va. 708, 156 S. E. 81; *Dudding* v. *White*, 82 W. Va. 542, 96 S. E. 942; *Davis* v. *Spragg*, 72 W. Va. 672, 79 S. E. 652; *D'Arago* v. *State Roads Commission*, ____ Md. ____, 180 A. 2d 488; *City of Shawnee, et al.* v. *Robbins*, 134 Okla. 142, 272 P. 457; *Crawford* v. *Town of Marion*, 154 N. C. 73, 69 S. E. 763; *Goodfellow Tire Co.* v. *Commissioner of Parks and Boulevards*, 163 Mich. 249, 128 N. W. 410. See Nichols, Eminent Domain (3rd Ed., 1962 Cum. Supp.), Sec. 10.2211, p. 64 and n. 8.6 thereto; Annotation 43 A.L.R. 2d 1072, Section 3 and cases cited.

A highway constructed under the jurisdiction of the State Road Commission is either a conventional road or it is a controlled-access facility. The owners of property abutting upon a conventional road have a vested right of access to that road. This is a property right of which the owner can not be deprived without just compensation. This right of access does not exist when a new highway, upon construction, is designated as a controlled-access facility. *D'Arago* v. *State Roads Commission*, ____ Md.____, 180 A. 2d 488. See Nichols, Eminent Domain (3rd Ed., 1962 Cum. Supp.), Section 10.2211, p. 64 and n. 8.5 thereto; Annotation 43 A.L.R. 2d 1072, Section 6 and cases cited. It is essential, therefore, in

this case, to first determine the classification of the road when constructed.

The state road commission acquired this 1.58 acre tract of land by voluntary conveyance. The deed was prepared by the commission on one of its standard printed forms. Nothing therein discloses that other than a conventional road was to be constructed. Nothing during the construction nor upon completion of the highway indicated that this was to be a controlled-access facility. Neither prior to the construction of the highway, nor upon the completion thereof, did the state road commissioner designate it as a controlled-access facility.

That the state road commissioner is authorized by law to plan, construct, and designate as such, a controlled-access highway, is unquestioned. Code, 17-4-40, as amended. It is equally clear that he may so designate an existing street or highway. Code, 17-4-43, as amended. However, that is merely a discretionary power granted to him under the above cited statutes. It appears quite clear, therefore, that if he fails to exercise that discretion, any road built under his jurisdiction must, until otherwise designated, be and remain a conventional highway.

In the case before us no such designation was made. It was, therefore, upon completion, a conventional highway. An examination of the commissioner's order dated January 8, 1960, unequivocally supports this conclusion. Therein it is stated: "The State Road Commissioner, after conducting a traffic and engineering investigation, finds that present and reasonably anticipated future traffic conditions require, in the public interest and for the public safety and convenience, that that portion of U.S. Route 52, in McDowell County, known as Project No. F-190 (5) * * * be designated as a controlled-access facility * * *.

"IT IS ACCORDINGLY ORDERED that the above-described portion of said road be, and the same hereby is, designated a controlled-access facility (freeway), as defined by Chapter 17, Article 4, Section 39, of the Code of West Virginia, as amended." It is admitted by the respondents that

the road in question was completed in 1957 and that this designation was not made until 1960.

We conclude, therefore, that the petitioners, upon the completion of the road in question, were owners of land abutting upon a conventional highway. That the state road commissioner, upon designating an existing highway as a controlled-access facility, must acquire the vested access rights of abutting landowners is clearly stated in Code, 17-4-43, as amended, as follows: "The state road commissioner * * * may designate and establish an existing street or highway as a controlled-access facility or as a part of a controlled-access facility, and in the event such existing street or highway be so designated, the commissioner may acquire, by grant, gift, purchase or if the exercise of the right of eminent domain be necessary for acquisition purposes, shall condemn existing and vested access rights of abutting landowners to such existing street or highway if such access rights are taken or destroyed." Accordingly, unless their right to recover for loss of access is barred by the statute of limitations, or unless they have voluntarily relinquished that right, the petitioners are entitled to have their rights adjudicated in a proceeding in eminent domain.

The respondents contend that if the denial to the petitioners of access from their property to the road resulted in compensable damage, their right to recover for such damage is barred by the provisions of Code, 55-2-12, as amended. The authorities are in conflict as to whether a statute of limitations applies to a proceeding in mandamus. 35 Am. Jur., Mandamus, Section 313; 53 C.J.S., Limitations of Actions, Section 102.

This Court has held, however, that the statute of limitations, as set forth in Code, 55-2-12, as amended, may act as a bar to any claim sought as a result of a proceeding in mandamus. *State ex rel. Dunn* v. *Griffith,* 139 W. Va. 894, 82 S. E. 2d 300. In that case the petitioner sought a writ of mandamus to compel the state road commissioner to institute a proceeding in eminent domain to determine the damages caused by an alleged encroachment on his property. The road was completed and opened to the use of the traveling

public in September, 1941. The mandamus proceeding was not instituted by Dunn until November 24, 1953. That the damage was done and a cause of action accrued to Dunn in 1941 was obvious. The strip of land which the petitioners claimed was taken by the State was situate along the front of petitioner's property and had been clearly marked by stakes. During construction of the highway the stakes were completely obliterated. At that time Dunn knew, or should have known, of the encroachment upon his property. The Court further held that the State had gained a prescriptive right in the land under the provisions of Section 3, Article 1, Chapter 17, Code, 1931. For these reasons it was said that the petitioner failed to show a clear legal right to the relief sought, and the writ was denied.

The instant case presents a different factual situation and, in relation to the statute of limitations, is distinguishable from the *Dunn* case. Here the respondents say that the statute of limitations began to run at that moment in November, 1959, when the petitioners were informed by the state road commission that they had no right of access to and from their properties abutting on the 1.58 acre right of way. In fact, nothing at that time had been taken from the petitioners, even though they erroneously had been denied access by an employee of the road commission. There could be no actual taking of the right of access until the road commissioner, in accordance with the provisions of Code, 17-4-43, as amended, designated and established this existing highway as a controlled-access facility. This was first done by the road commissioner by an order dated January 8, 1960. This order was never published in any manner nor did the petitioners have any notice or knowledge thereof.

When did the statute of limitations begin to run? The general rule is that the statute begins to run from the date of the injury. Therefore, it may be said that the statute began to run on January 8, 1960, the date on which the state road commissioner, by order, designated this road as a controlled-access facility. That is the date on which the petitioners' vested access right was actually taken. This petition was filed on February 13, 1962, more than two years af-

ter said designation by the state road commissioner. It must follow that unless, for some reason, the running of the statute is tolled, the claim of the petitioners is barred.

The state road commissioner, under the provisions of Code, 17-4-43, as amended, is authorized to change the classification of a conventional road by designating it a controlled-access facility. The statute further provides that should he do so he may acquire the existing and vested access rights by gift, grant, purchase or, if necessary, by condemnation. Here nothing has been done to acquire such vested rights. The mandate of the statute requiring him to acquire these vested rights was ignored.

The statute is silent as to the manner in which the aforesaid designation by the road commissioner should be made. Since that designation changing the classification of an existing highway effects a change in title to a vested property right, it is incumbent upon this Court to consider whether that designation was accomplished in a reasonable and just manner. In this proceeding the state road commissioner changed the classification of this road by entering an order which was apparently filed only in his office. Where an act of the commissioner effects a change in the title to a vested property right, such act should be published in some manner, or notice thereof should be given or made available to the property owners concerned. We believe that the legislature intended that the designation referred to in the statute be directed to the public. "When a statute authorizes a legal proceeding and does not expressly provide for notice to be given the defendant, it is implied that an opportunity shall be offered him to appear in defense of his rights unless the contrary appear." 17 Michie's Jurisprudence, Statutes, Section 43.

As heretofore stated, the record fails to reveal that the action of the road commissioner was in any manner published or recorded in the county wherein the property is situate or that the petitioners, even though a diligent search was made, could have discovered that their vested property right had been taken. Certainly if the road commissioner had orally stated in his office that this road was changed

from a conventional highway to that of controlled-access, such oral statement could not constitute a designation as contemplated by the statute. His action here of filing such order in his own office, without any manner of notice, could have no greater effect. We believe that the principles of equity, fairness and justice, and a reasonable interpretation of Code, 17-4-43, as amended, require the commissioner to overtly designate any change in classification of a highway so that the effect of his action will be readily discernible by any property owner involved. Otherwise it is conceivable that such a public official could, by secret action in his office, accomplish the taking of private property without notice.

The soundness of this reasoning becomes more evident in view of the intangible property right involved in this proceeding. Where the road commissioner physically takes or encroaches upon one's tangible property, the owner thereof should soon become cognizant of the taking or encroachment. In this case, the property involved is a right of access to a public road. The taking of that right is not readily discernible. See *Petrelli* v. *West Virginia-Pittsburgh Coal Company*, 86 W. Va. 607, 104 S. E. 103, wherein the Court said in Point 4 of the Syllabus: "Where a cause of action accrues for the unlawful removal of coal by wrongfully extending mining operations into adjoining property, the statute of limitations begins to run only from the time of actual discovery of the trespass, or the time when discovery was reasonably possible." The Court reasoned that such wrongful subterranean removal of coal could not have been known by the plaintiffs and that the statute did not begin to run until they did discover or had reason to know of the removal of their coal. In the proceeding before us, the petitioners could not have known of the unpublished order entered by the state road commissioner which resulted in the loss of the property to them. Furthermore, inasmuch as a controversy had existed over access rights between the petitioners and the state road commissioner about which the commissioner knew, or should have known, he was under a duty, in changing the classification of this highway, resulting in a taking of petitioners' property, to make knowledge of his action

available to the petitioners and other owners of property abutting along such highway.

It is alleged by the petitioners, and it is undisputed, that a diligent search was made of the records, maps and orders in the office of the Clerk of the County Court of McDowell County, and that such search failed to reveal any action by the state road commission by which the highway in question was designated a controlled-access facility. It was further alleged by the petitioners, and also not disputed, that they first learned of the entry of the commissioner's order of January 8, 1960, in September, 1961.

What is the effect of the state road commissioner's action? We do not say that he acted fraudulently, nor can we say that there was an actual concealment. However, the commissioner did know that his designation, changing the classification of this highway, would, under the statute (Code, 17-4-43, as amended), deprive the petitioners of a property right. Having such knowledge, he was under a duty to make his action known to the petitioners. Furthermore, we believe that the petitioners alleged and proved a good reason for their failure to discover the wrong. *Harper* v. *Harper*, 252 Fed. 39.

The general rule stated above, concerning the time when the statute of limitations begins to run, further says that mere lack of knowledge of the actionable wrong does not suspend it, nor does the silence of the wrongdoer, unless he has done something to prevent discovery of the wrong. In view of the circumstances in this case, and particularly the duty of the commissioner to, in some manner, give notice of his action, we believe that the running of the statute was suspended until such time as the petitioners herein knew, or had reason to know, of the change in the designation of this highway. To hold otherwise may permit the state road commissioner or other public official to take private property without notice and without payment of just compensation. "Private property shall not be taken or damaged for public use, without just compensation * * *". West Virginia Constitution, Article III, Section 9. It is imperative that this paramount provision of our organic law be given effect.

There is a line of decisions in this and other jurisdictions holding tenaciously to the proposition that neither lack of knowledge of the wrong by the plaintiff nor mere silence of the wrongdoer will suspend the operation of the statute of limitations. Generally, these are cases alleging malpractice against physicians and surgeons. *Baker* v. *Hendrix,* 126 W. Va. 37, 27 S. E. 2d 275; *Gray* v. *Wright,* 142 W. Va. 490, 96 S. E. 2d 671; *Pickett* v. *Aglinsky,* 110 Fed. 2d 628. We do not here overrule or depart from those cases but we do believe that the instant case is readily distinguishable. In this case the state road commissioner was charged with the duty to take specific action in order to change the classification of an existing conventional highway to that of controlled-access. In the circumstances described above, performance of this duty required something in addition to mere designation. It required some manner of publication or notice of his action to those affected.

In the so called malpractice cases a mere chose in action was taken from the plaintiffs while, in this case, in addition to a chose in action, an actual property right was taken. In *Baker* v. *Hendrix, supra,* this Court held that the operation of the statute was suspended for the reason that the physician had knowledge of the wrong and did not inform, or withheld from, the plaintiff such knowledge. Here the state road commissioner certainly knew that his action of changing the classification of an existing highway would, under the law, operate to divest these petitioners of a property right. Being in possession of this knowledge, it became his duty to inform petitioners of his action so they would have an opportunity to preserve their rights.

We hold, therefore, that the statute did not begin to run until the petitioners discovered in September, 1961, the taking of their property. Since this proceeding was instituted on February 13, 1962, it was within the two year period and the defense of the statute of limitations must fail.

The respondents further contend that by the general release set forth in the deed of August 23, 1954, the petitioners relinquished all rights in their land, including the right of access to and from their abutting property. We find this

contention untenable. The release specifically released the commission "from any and all claims for damages *that may be occasioned to the residue of the lands* of the parties of the first part *by reason of the construction and maintenance of a state road* over, upon and under the tract or parcel of land herein conveyed." (Italics supplied). We believe the terms thereof clear and unambiguous and not subject to interpretation or construction. This Court has consistently held that the language of a contract must be accorded its plain meaning, and, where plain, the language must be given effect, no construction or interpretation being permissible. See *Stone v. National Surety Corporation,* 147 W. Va. 83, 125 S. E. 2d 618.

In *Moore v. Hope Natural Gas Co.,* 76 W. Va. 649, 86 S. E. 564, this Court held that an instrument acknowledging receipt of a certain sum in full for all damages "caused by or arising from the laying, maintaining, and operating of a pipe line" was held to cover only past injuries to the land.

The release in its plain terms provides that it was a release of claims for damages to the residue by reason of the construction and maintenance of a state road over the lands of the petitioners. It is clear in this proceeding that we are concerned not with damages to the residue done by construction and maintenance of a state road, but with an actual taking of an intangible vested property right—the right of an abutting owner of ingress and egress to and from his property.

There can not be a release without unequivocal acts showing expressly or by implication an intention to release. 45 Am. Jur., Release, Section 28. Clearly there was no express showing of any release of this vested interest, nor can we necessarily imply any intention to so release this right. We readily agree that this property right can be taken by the State in a prescribed manner (Code, 17-4-43, as amended), but the facts in this case make it clear that the State has not so acquired this vested property right. They did not even attempt to take this property right from the petitioners until after "conducting a traffic and engineering investigation" they found that in the interest of the public, the portion of

the highway here involved "be designated as a controlled-access facility". This was set forth in the January 8, 1960, order of the state road commissioner. Why would the state road commissioner enter this order designating this portion of U.S. Route 52 as a "controlled-access facility" if in fact the right of access had been previously taken by the wording of the August, 1954, deed? Is not the purpose of the non-access facility provision of our statute to deny access to the users of the highway except at established points? We conclude, therefore, that the release contained in the August, 1954, deed did exactly what it said and released the commission of "all claims for damages * * * occasioned to the residue * * * by reason of the construction and maintenance of a state road over, upon and under the tract or parcel of land herein conveyed". It did no more or no less. It did not release any and all claims for any and all rights. It did not release nor did it purport to release any rights of access.

For the foregoing reasons, the writ of mandamus herein prayed for is awarded.

*Writ awarded.*