UNITED STATES of America, et al., Plaintiffs,

v.

CENTEX CONSTRUCTION CO., INC., et al., Defendants.

Civ. A. No. 83–0625–R.

United States District Court, W.D. Virginia, Roanoke Division.

Nov. 21, 1985.

---

S.D. Roberts Moore, Roanoke, Va., for plaintiffs.

Heman A. Marshall, Roanoke, Va., Joseph D. West, Jones, Day, Reavis & Pague, Washington, D.C., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

This diversity action comes before the Court on defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56. The issues have been fully briefed and argued to the Court, and the essential facts are not in dispute. Hence, the matter is now ripe for disposition.

Defendant Centex Construction Company ("Centex") entered into a contract in June 1980 with the United States Army Corps of Engineers to construct a facility at Radford, Virginia. Several months later, Centex entered into three (3) written subcontracts with plaintiff Pete O'Dell & Sons ("O'Dell"), whereby the latter would erect certain iron and steel structures at the Radford facility. Each subcontract provided that no clause could be "waived or changed except in writing" by an executive officer of Centex. The subcontracts also contained a "Damage Notification" clause, which stated that:

> Notice of any damage or additional cost which subcontractor alleges the contractor, ... [has] caused or [is] causing it by [its] act or omission shall be filed in writing with the Contractor ... within seven days from commencement of such alleged damage or additional cost.... *No claims for such damage shall be valid unless the Subcontractor complies with all the requirements of this paragraph.*

*See* Defendants' Exhibit 1, p. 3 (emphasis added).

O'Dell began the subcontracting work in late 1980 and received periodic payments

from Centex. Each time O'Dell received payment, Pete E. O'Dell (the president of the company) signed a "release agreement" discharging Centex from "all ... causes of action of every character whatsoever arising out of or in connection with said subcontract...." Defendants' Exhibit 4. Mr. O'Dell signed the release agreement a total of fifty five (55) times during a two-year period.

In a February 9, 1983 letter to Mr. Robert Hay, President of Centex, O'Dell requested Centex to pay an additional $404,-818.59 which was allegedly due for work performed in addition to the contract. Defendants' Exhibit 5. Mr. Hay had not received a written notice requesting such additional payment prior to this letter. Defendants' Exhibit 6, ¶ 4.

## II

The "damage notification clause" and the fifty-five release agreements signed by O'Dell are the issues before the Court today. First, defendant contends that the release agreements must be enforced under Virginia law. Second, defendant argues that failure to comply with the "damage notification clause" bars O'Dell's claim for additional payments. Applying Virginia law, the Court is compelled to agree with both contentions.

### A.

■ A release is a writing providing that a duty owed to the maker of the release is discharged immediately.... Restatement, *Contracts* 2d § 284(1). A release requires an unequivocal act expressing or implying an intent to release. *State ex rel. Ashworth v. State Road Commission*, 147 W.Va. 430, 128 S.E.2d 471 (1962). A release must generally be supported by consideration to be valid. *See Parker v. Murphy*, 152 Va. 173, 146 S.E. 254 (1929). However, the sealing of any instrument conclusively imports consideration under Virginia law, and "no proof to the contrary is admitted...." *Norris v. Barbour*, 188 Va. 723, 736, 51 S.E.2d 334, 339 (1949).

■ Plaintiff signed fifty-five (55) releases over a two-year period, discharging defendant "from all debts, claims, ... and causes of action...." Defendant's Exhibit 4. Each release was signed by the plaintiff's president, Mr. Pete O'Dell, and was executed under seal. Further consideration is not required in Virginia. Therefore, defendant is entitled to summary judgment on all three counts of the complaint.

### B.

Defendants also assert that Count I must be dismissed because O'Dell failed to notify Centex within seven (7) days after the additional work was performed. Virginia courts have upheld such contractual clauses between contractors and subcontractors for nearly a hundred years. *See Atlantic and Danville Ry. v. Delaware Construction Co.*, 98 Va. 503, 37 S.E. 13 (1900). Clauses requiring that the contractor give written authorization for additional work have also been recognized in other jurisdictions. *See General Specialties Co., Inc. v. Nello L. Teer Co.*, 41 N.C.App. 273, 254 S.E.2d 658 (1979); *Biltmore Construction Co., Inc. v. Tri-State Elec. Contractors, Inc.*, 137 Ga.App. 504, 224 S.E.2d 487 (1976). Judge Michael of this district recently upheld a similar clause after concluding that the provision had not been waived. *Service Steel Erectors Co. v. SCE, Inc.*, 573 F.Supp. 177 (W.D.Va.1983).

■ The plaintiffs attempt to avoid the clear language of the contract by arguing that Centex placed it in "economic duress". Plaintiff's Memorandum at p. 4. However, Virginia courts carefully scrutinize duress claims; otherwise, such a claim could be raised in every contract suit. *See-ward v. American Hardware Co., Inc.*, 161 Va. 610, 171 S.E. 650 (1933); *see also Bond v. Crawford*, 193 Va. 437, 69 S.E.2d 470 (1952). Furthermore, a duress claim would require that Centex have placed O'Dell in a position of financial weakness. *In re Consolidated Pre-Trial Proceedings in Air West Securities Litigation*, 436 F.Supp. 1281, 1290 (N.D.Cal.1977). The Court finds no such allegation in this case.

### III

In conclusion, O'Dell has validly released Centex from all contractual and tort claims; hence, Counts I, II and III can be dismissed. Count I can also be dismissed on an alternative ground, in that O'Dell failed to comply with the notice provision of the contract.

Defendants' Motion for Summary Judgment will be granted in an order to be entered this date.