**ECONO LODGES OF AMERICA, INC., Plaintiff,**

v.

**NORCROSS ECONO–LODGE, LTD., Bill G. King, the Spectrum Group, Inc., Norcross Econo L.P., formerly Norcross Econo Lodge, Ltd., and Heritage Equities Title Holding Corporation, Defendants.**

**No. C–C–89–449–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

April 11, 1991.

Charles E. Johnson, Moore & Van Allen, Charlotte, N.C., for plaintiff.

David N. Allen, Kevin A. Dunlap and Ronald L. Cornell, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N.C., and K. Douglas Barfield, Fayetteville, N.C., for defendants.

## ORDER

ROBERT D. POTTER, District Judge.

THIS MATTER is before the Court on Plaintiff's motion, filed February 6, 1991, for Judgment Notwithstanding the Verdict ("JNOV"), or in the alternative, for a new trial. On February 27, 1991, Defendant Bill G. King (the only remaining Defendant in this action and hereinafter referred to as "Defendant") filed a response to Plaintiff's motion. Plaintiff, on March 15, 1991, filed a reply memorandum in support of its motion. On March 29, 1991, Defendant filed a response to Plaintiff's reply memorandum.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

The dispute in this matter revolved around a franchise agreement entered into by Plaintiff and Defendant for a motel located in Norcross, Georgia. Defendant signed the franchise agreement as a general partner of Norcross Econo-Lodge, Ltd. and as an individual guarantor.

On November 11, 1989, Plaintiff filed the complaint in this matter. Plaintiff sued Defendant in his capacity as an individual guarantor of the franchise agreement, and not in his role as a general partner. Plaintiff alleged that Defendant was liable to it for unpaid franchise fees in the amount of $70,629.63, plus attorney fees. On January 19, 1990, Defendant filed his answer raising the affirmative defenses of novation, waiver, estoppel, and release.

From November 14, 1990 through November 16, 1990, this Court presided over the trial of this matter to a jury. After the close of Defendant's evidence, the Court granted Plaintiff's motion for a directed verdict on the defenses of novation, waiver and estoppel. However, the Court denied Plaintiff's motion for a directed verdict on the defense of release. The Court found Defendant's evidence regarding the issue of release sufficient to go to the jury. That evidence indicated that Defendant believed that Plaintiff had released him from his obligations under the franchise agreement. The evidence also included a conversation between Defendant and Plaintiff's President, Bob Weller, in which Mr. Weller reportedly told Defendant that he would not be sued for the non-paid franchise fees. Defendant further introduced several internal documents of Plaintiff which appeared to indicate that certain employees of Plaintiff believed that Defendant had been released from the agreement. Moreover, the franchise agreement incorporated into the complaint indicated that an employee of Plaintiff had stricken Defendant's name from the cover sheet.

No issue was in dispute regarding whether Defendant would be liable if the jury failed to find that he had been released by Plaintiff from any obligations under the

franchise agreement. Therefore, the Court submitted two (2) questions to the jury. First, the jury was directed to answer the following question: "Did plaintiff Econo Lodges of America, Inc. release the defendant Bill G. King from his obligations under the Franchise Agreement?". Only if the jury answered "No" to this question was it to go on to the second question which directed it to determine the amount of damages suffered by Plaintiff.

After deliberating for several hours, the jury answered the first question in the affirmative. Thus, the jury was not required to address the issue of damages. After the jury had been dismissed, Plaintiff moved for JNOV, and in the alternative, for a new trial. The Court directed the parties to file briefs in support of their respective positions. Having carefully considered the briefs, the Court believes Plaintiff's motions must be denied. The Court's reasoning follows.

## II. PLAINTIFF'S MOTION FOR JNOV.

### A. *Applicable Standard of Review.*

Rule 50(b) of the Federal Rules of Civil Procedure is applicable for motions for judgment notwithstanding the verdict. That Rule provides in pertinent part:

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict; ... A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a

new trial or direct the entry of judgment as if the requested verdict had been directed.

In ruling on a motion for judgment notwithstanding the verdict, the district court must determine whether sufficient evidence exists in the record as a whole upon which a reasonable fact finder properly could return a verdict in favor of the prevailing party. *See Herold v. Hajoca Corp.,* 864 F.2d 317, 319 (4th Cir.1988); *Gries v. Zimmer, Inc.,* 742 F.Supp. 1309, 1313 (W.D.N.C.1990). The court must view the evidence in the entire record in the light most favorable to the prevailing party. *See Gries,* 742 F.Supp. at 1313. All reasonable inferences from the facts presented at trial are made in favor of the non-moving party. *Id.* Moreover, the district court in considering a JNOV motion must not weigh the evidence nor assess the credibility of witnesses. *Id.; see also Taylor v. Home Ins. Co.,* 777 F.2d 849, 854 (4th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2249, 90 L.Ed.2d 695 (1986).

### B. *Legal Effect of Oral Release.*

Plaintiff's primary argument in support of its motion for a JNOV is that the purported release entered into by the parties was oral and not written as required by Virginia law.[1] In support of its position, Plaintiff relies on the Virginia Supreme Court case of *Sachs v. Owings,* 121 Va. 162, 92 S.E. 997 (1917). In that case, the court noted that a contract under seal (such as the franchise agreement in this case) "can be modified or abrogated only by an instrument of equal dignity, i.e. by one under seal". *Id.* 92 S.E. at 1000. However, Plaintiff has not cited to one other Virginia case extending the holding of *Sachs.*

Defendant, on the other hand, has cited to two cases which are in direct contradiction to *Sachs.* In *Georgeton v. Reynolds,* 161 Va. 164, 170 S.E. 741 (1933), the Virginia Supreme Court reversed the trial court's decision to strike evidence of an

1. The parties are in agreement that the franchise agreement provides that Virginia law is applicable to this action.

oral release. *Id.* 170 S.E. at 743. Although the court did not specifically overrule *Sachs*, the court nonetheless found that evidence of an oral release of a contract *under seal* should be considered by the jury. *Id.* at 744–45.

The Fourth Circuit also implicitly adopted the *Georgeton* holding in *Reserve Insurance Co. v. Gayle*, 393 F.2d 585 (4th Cir.1968). In applying Virginia law to the dispute before it, the Fourth Circuit stated:

> On these facts, the district judge correctly submitted to the jury the question of whether Gayle was released from his guaranties prior to June 1, 1961, and the jury's determination that Gayle was, is unimpeachable. Admittedly, there was not a formal document of release which could be pointed to. *But there was no legal requirement that a release to be effective must be in writing.* Certainly, there was ample evidence in the combination of the documents which passed between the parties (as well as those which did not pass), the testimony of Gayle and the subsequent acts of the parties from which the jury could have found that Gayle was released as he contended. The conflict in the testimony of Gayle and Blank made the issue an appropriate one for jury determination, and resolution of that issue, depending as it did so largely on the determination of the credibility of the two principals, was peculiarly one in which the jury's determination was final.

*Reserve Insurance*, 393 F.2d at 588. The parties have not cited any other cases in support of their positions, and the Court in conducting independent research was unable to find other cases addressing whether an oral release under Virginia law is recognizable.

Naturally, the parties have attempted to distinguish the cases on which they rely from the cases cited by opposing counsel. The Court has carefully considered these arguments, and finds the exercise of attempting to distinguish *Sachs* from *Georgeton* and *Reserve Insurance* to be akin to attempting to fit a square peg in a round hole. The Court believes that the cases are in direct conflict. Therefore, the Court is left to choose the cases which it finds more persuasive. In doing just this, the Court finds the rationale of *Georgeton* and *Reserve Insurance*, both of which are more recent cases, to be more compelling than *Sachs*. Accordingly, the Court finds that Virginia law recognizes oral releases of written contracts, regardless of whether the written document was under seal.

### C. *Elements of a Valid Release.*

■ A release is an agreement providing that a duty owed to the maker of the release is discharged immediately. *See United States v. Centex Construction Co., Inc.*, 638 F.Supp. 411 (W.D.Va.1985). In order to demonstrate that a party was released from a contract, Virginia law requires the party raising such a defense to carry the burden of meeting a three-prong test. First, "[a] release requires an unequivocal act expressing or implying an intent to release". *See Centex Construction Co., Inc.*, 638 F.Supp. at 413 (citing to *State ex rel. Ashworth v. State Road Commission*, 147 W.Va. 430, 128 S.E.2d 471 (1962)). Second, the parties executing the release must have intended to discharge the obligation owed. *See Smith v. Hensley*, 202 Va. 700, 119 S.E.2d 332, 335 (1961). Third, the release must be supported by consideration. *See Brewer v. First National Bank of Danville*, 202 Va. 807, 120 S.E.2d 273, 279 (1961).

The Court will discuss each prong below.

### 1. *An Unequivocal Act.*

■ In arguing that there is no evidence that Plaintiff expressed an unequivocal act to release Defendant from his obligations under the franchise agreement, Plaintiff contends that the statement by its president that Plaintiff would not sue Defendant is insufficient to meet this prong of the test. *See Richmond Leather Manufacturing Co. v. Fawcett*, 130 Va. 484, 107 S.E. 800, 809 (1921) (stating that oral "contract not to sue ... is not considered an enforceable undertaking"); *but see Georgeton*, 170 S.E. at 744 (distinguishing *Richmond Leather* in release case because that case only dealt with waiver).

The Court believes that the question of whether the statement of Plaintiff's president indicated an unequivocal act to release Defendant was one for the jury. In *Reserve Insurance*, there was conflicting evidence regarding whether Plaintiff's agent advised Gayle that he "was released from his premium guaranties, and (told) to 'forget it'". *Reserve Insurance*, 393 F.2d at 587. The Fourth Circuit found that the district court was correct in submitting this question to the jury, and that the jury determination that a release had occurred was "unimpeachable". *Id.*

Defendant also introduced evidence at trial that corroborated the statement of Plaintiff's president. For example, Defendant's name was stricken as a franchisee on the last page of the franchise agreement in this case. Moreover, a form was prepared by the director of Plaintiff's legal department in which Defendant was deleted as a franchisee. One of Plaintiff's former vice-presidents testified on behalf of Defendant that from his experience the preparation of a deletion form relieved the stricken person from all liabilities under the franchise agreement.[2]

In ruling on Plaintiff's motion, the Court is required to view the evidence presented in a light most favorable to Defendant. Based on the statement of Plaintiff's president and the other corroborating evidence presented by Defendant, the Court believes that sufficient evidence was presented to the jury for it to make a reasonable determination that Plaintiff expressed an unequivocal act to release Defendant from his obligation under the agreement.

### 2. *Intent to Release Defendant.*

The Court believes that the statement of Plaintiff's president to Defendant in connection with the corroborating evidence presented by Defendant demonstrated that Plaintiff intended to release Defendant. Accordingly, the Court believes that in considering the evidence in the light most favorable to Defendant that this prong of the test was satisfied by Defendant at trial.

### 3. *Consideration.*

■ The final prong of the test to determine if a valid release was entered required Defendant at trial to show valuable consideration was exchanged. Defendant contends that detrimental reliance can constitute consideration. Alternatively, Defendant argues that he suffered sufficient detriment in entering into the release, such that the consideration prong of the test has been adequately met.

The Court believes that Defendant is correct in arguing that detrimental reliance can constitute consideration. In *Georgeton*, the court indicated:

> A waiver or release, however, without consideration may sometimes be sufficient when one has thereby been inducted to alter his position to his prejudice ... Though promissory estoppel is not ordinarily a substitute for consideration, justice demands that in the cases supposed the promisee should not be allowed to hold the promisor liable for his non-performance.

*See Georgeton*, 170 S.E. at 744.

■ Even if detrimental reliance cannot be a substitute for consideration, the Court believes based on Virginia law that Defendant proved at trial that adequate consideration was exchanged for the release. The Virginia Supreme Court has defined consideration in the following manner:

> Consideration is, in effect, the price bargained for and paid for a promise. It may be in the form of a benefit to the party promising or a detriment to the party to whom the promise is made. It matters not to what extent the promisor is benefited or how little the promisee may give for the promise. *A very slight advantage to the one party or a trifling inconvenience to the other is generally held sufficient to support the promise.*

*See Brewer*, 120 S.E.2d at 279. In applying the test, the court found that the decision of the plaintiff to quit her job after being promised by the defendant to pay her

---

**2.** Plaintiff has argued that the testimony of its former vice president was dubious. However, in ruling on a JNOV motion, the Court is not permitted to assess the credibility of witnesses. *See Gries*, 742 F.Supp. at 1314.

a salary for life constituted a "trifling inconvenience", and thus, adequate consideration. *Id.* at 280.

In this case, Defendant testified at trial that he suffered a detriment on entering into the release agreement by not further memorializing the terms of the release, not obtaining security from the party assuming his responsibilities under the agreement, and making an investment decision with the understanding that he would not be held personally liable for obligations under the agreement. Obviously, the jury found this evidence constituted a sufficient showing of consideration. Based on the arguments presented by the parties, the Court cannot find that the conclusion of the jury was erroneous.

### III. *PLAINTIFF'S MOTION FOR A NEW TRIAL.*

▆ Motions for a new trial are governed by Rule 50(c) of the Federal Rules of Civil Procedure. That Rule provides in pertinent part:

If the motion for judgment notwithstanding the verdict, provided for in subdivision (b) of this rule, is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered.

A new trial may be ordered if the district court determines that the jury verdict was against the clear weight of the evidence, or if the court erred in instructing the jury. *See Gries,* 742 F.Supp. at 1321 (citing *Wyatt v. Interstate & Ocean Transp. Co.,* 623 F.2d 888, 891–92 (4th Cir.1980); *Great Coastal Express, Inc. v. International Bhd. of Teamsters,* 511 F.2d 839, 846 (4th Cir.1975)). The court is to weigh the evidence and assess the credibility of the witnesses in determining whether the jury verdict is against the greater weight of the evidence. *See Gries,* 742 F.Supp. at 1322. In addition to considering whether the jury verdict is against the greater weight of the evidence, the court may also consider if the evidence is false or if the verdict will result in a miscarriage of justice. *See Wyatt,* 623 F.2d at 891–92. In ruling on a motion for a new trial, the district court is called upon to engage in a "comparison of proofs". *See Ellis v. International Playtex, Inc.,* 745 F.2d 292, 298 (4th Cir.1984).

▆ In this case, Plaintiff argues that a new trial is appropriate because Defendant failed to offer substantial evidence of an act of release, Plaintiff's intent to release him, or consideration of the release. At trial, Plaintiff did introduce evidence that tended to show that it did not release Defendant. However, after carefully reviewing that evidence, the Court is unable to conclude that the jury verdict was against the greater weight of the evidence or that a miscarriage of justice will result if a new trial is not conducted. The Court recognizes that the evidence was in conflict. However, the Court believes that jury adequately weighed the evidence presented, and returned a reasonable verdict.

▆ Plaintiff also argues that a new trial is appropriate in this case because this Court failed (1) to instruct the jury that it should not consider the existence or non-existence of a partnership entity as a party to the franchise agreement and (2) to instruct the jury on the effect of parol evidence.

As to Plaintiff's first contention regarding improper jury instructions, the Court did charge the jury that it "should not consider the presence or absence of other parties to this lawsuit in your deliberation of this case as to Bill King". The Court believed that Plaintiff's proposed instruction was redundant to the instruction given by the Court, and that the instruction given by the Court adequately covered the information contained in Plaintiff's proposed instruction.

▆ As to Plaintiff's second contention, the Court during the trial of this matter

sustained Plaintiff's objection regarding parole evidence that Defendant attempted to introduce. Therefore, parole evidence was not before the jury, and the Court believed no purpose would be served other than confusion by giving such an instruction.

For the reasons enunciated herein, the Court believes that the greater weight of the evidence supports the jury verdict. The Court further believes that the instructions given or not given to the jury do not warrant a new trial. Therefore, the Court will deny Plaintiff's motion for a new trial.

## IV. ORDER OF THE COURT.

NOW, THEREFORE, IT IS ORDERED that Plaintiff's motion for Judgment Notwithstanding the Verdict, or in the alternative, for a new trial be, and hereby is, DENIED. The Court has simultaneously with the filing of this Order entered a final judgment in this case.