Wayne R. GRIES, Plaintiff,

v.

ZIMMER, INC., Defendant.

Michael J. MORAN, Plaintiff,

v.

ZIMMER, INC., Defendant.

Nos. C–C–87–576–P, C–C–87–477–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

July 20, 1990.

As Amended July 23, 1990.

Louis L. Lesesne, Jr., Charlotte, N.C., for Gries.

Richard A. Vinroot, Charlotte, N.C., for Moran.

Martin N. Erwin & Julie C. Theall, Smith Helms Mulliss & Moore, Greensboro, N.C., for defendant.

## MEMORANDUM OF DECISION AND ORDER

ROBERT D. POTTER, Chief Judge.

THESE MATTERS are before the Court on the parties' post-trial motions. Both the Plaintiffs and the Defendant, Zimmer Inc. (hereafter "Zimmer"), exhaustively have

briefed the issues raised by the various motions.

## I. PROCEDURAL BACKGROUND

After being terminated from their employment with Zimmer, the Plaintiffs separately filed these actions. The Plaintiffs alleged violations of the Age Discrimination in Employment Act (ADEA) and breach of contract. *See* 29 U.S.C. §§ 621–634 (1988) (ADEA). The Court consolidated these two cases for trial. The Court granted summary judgment in Zimmer's favor on the Plaintiffs' breach of contract claims. The Court then presided over a jury trial on the Plaintiffs' age discrimination claims, which began on January 10, 1990, and culminated with a jury verdict in the Plaintiffs' favor on January 19, 1990.[1] The jury found that Zimmer terminated each of the Plaintiffs because of their age.[2] The jury awarded Plaintiff Michael J. Moran back pay in the amount of $40,540.44, exactly half of the amount sought. The jury awarded Plaintiff Wayne R. Gries back pay in the amount of $55,851.10, exactly half of the amount sought. On January 22, 1990, the Court entered a Judgment consistent with the jury verdict. On January 30, 1990, Zimmer filed a Motion for Judgment Notwithstanding the Verdict or For a New Trial. On the same date, the Plaintiffs filed a Motion to Amend Judgment and for Judgment Notwithstanding the Verdict, and alternatively, for a New Trial.

## II. A SUMMARY OF THE EVIDENCE

To put the parties' post-trial motions in context, the Court briefly will summarize the evidence adduced during the eight-day trial of these cases. Zimmer is a wholly-owned subsidiary of Bristol–Myers and is headquartered in Warsaw, Indiana. Zimmer manufactures orthopedic devices and surgical instruments and supplies. In North Carolina, Zimmer operated a division known as Patient Care Systems (hereafter "Patient Care"), which manufactured and supplied products associated with Zimmer's medical metalworking process. Zimmer also operated several other divisions in other states, including Snyder Laboratories (hereafter "Snyder") and Aspen Laboratories (hereafter "Aspen").

Zimmer originally employed both Plaintiffs in Indiana. Zimmer initially hired Moran in 1975 as Manufacturing Controller and Gries in 1979 as Budget Director. Moran worked for Zimmer in Indiana from 1975 until 1980, at which time he became Patient Care's Vice President–Finance in North Carolina. In 1984 Moran became Vice President–Operations and took direct responsibility for the production operations at Patient Care. Upon Moran's ascension to Vice President–Operations in 1984, Gries moved to North Carolina and became Vice President–Finance for Patient Care.

Both Moran and Gries worked directly for Mr. Robert Teskey, the President of Patient Care. Teskey had been the President of Patient Care for some time. During the time that Moran and Gries worked at Patient Care, Teskey had rated the Plaintiffs as either very effective or effective.

Mr. Ron Davis, the Executive Vice President of Zimmer, was responsible for overseeing the operation of Patient Care. Beginning in 1986, Davis began to lose confidence in the top management of Patient Care for primarily two reasons. First, during the first half of 1986, a discrepancy of approximately $840,000 between the physical inventory and the book inventory developed. Neither Teskey nor Gries informed Zimmer of the inventory discrepancy until late July 1986, despite presenting Zimmer with Patient Care's quarterly financial report in early July 1986. Gries ultimately reported the inventory discrepancy to Zimmer shortly before Bristol–Myers performed an on-site financial audit at Patient Care. Because of the inventory discrepan-

---

1. The January 1990 jury trial of these cases actually was the second jury trial of these cases. In March 1989, the parties tried these cases to a jury. The Court, however, declared a mistrial when the jury was unable to reach a unanimous verdict.

2. The jury found, however, that Zimmer did not willfully violate the ADEA.

cy, Bristol–Myers subsequently issued a qualified audit and cited numerous operational problems as primary contributing factors in the inventory discrepancy. Although eventually corrected, the inventory discrepancy required Zimmer to claim a loss on its financial statements. Davis informed Teskey of his dissatisfaction with the handling of the inventory discrepancy by Patient Care's top management. Davis also requested Teskey to notify Moran and Gries of his dissatisfaction.

Davis began to lose confidence in the top management of Patient Care, secondly, because he learned of the differing management philosophies and techniques used by Moran and Gries, which resulted in open conflict and a strained relationship between Moran and Gries personally and between those who worked for them. The strained relationship caused a lack of cooperation, communication, and coordination between Patient Care's finance department and operations/manufacturing department. Teskey apparently failed to alleviate the friction between the two managers and their respective staffs.

As a result of both the handling of the inventory discrepancy and the perceived working environment at Patient Care, Davis did not recommend any bonuses for Patient Care's top management, including Teskey and the Plaintiffs, at the end of 1986. In evaluating the Plaintiffs at the end of 1986, Davis commented on his dissatisfaction in their performance.

On April 6, 1987, Zimmer announced a consolidation of Patient Care and Snyder into the Patient Care Division (hereafter "the new Patient Care"). The new Patient Care maintained operations in both Ohio and North Carolina. Davis had decided to consolidate Patient Care and Snyder because of Patient Care's poor performance since 1985. In consolidating the two divisions, Davis intended to reduce overhead and other costs, to improve profitability, and to improve the manner of operations of Zimmer's North Carolina operations. Because of his satisfaction with Snyder's management and his dissatisfaction with Patient Care's management, Davis decided to retain Snyder's management team and to terminate Teskey and the Plaintiffs. On April 6, 1987, Davis fired Tesky, Moran, and Gries. When fired, Teskey was 52 years of age, Moran was 44 years of age, and Gries was 40 years of age. When Davis fired Teskey and the Plaintiffs, Davis informed them that the consolidation, not performance problems, caused their discharges. To avoid humiliating Teskey or the Plaintiffs, Davis did not discuss his dissatisfaction with them or his loss of confidence in their abilities.

Upon the consolidation, Charles L. Deeds, who was 57 years old, became the President of the new Patient Care and worked out of the Ohio office. Marley D. Price, who was 35 years old, immediately became the Vice President–Controller on an interim basis. Price worked out of the Ohio office and reported directly to Deeds. Ken R. Coonce, who was 35 years old, became the Manufacturing Controller and reported directly to Price. Coonce worked out of the North Carolina office. Because Coonce did not want to work permanently as the Manufacturing Controller in North Carolina, Zimmer replaced him on July 27, 1987, with William Franko, who was 37 years old.

Upon the consolidation, Thomas W. Hufziger, who was 58 years old, immediately became the Vice President–Operations in North Carolina on an interim basis. Hufziger worked out of the North Carolina office and reported directly to Deeds. Because Hufziger did not want to work permanently as the Vice President–Operations in North Carolina for the new Patient Care, Zimmer replaced him on July 27, 1987, with L.A. Harvey, who was 37 years old.

Several other executives of the new Patient Care reported directly to Deeds, the President. James C. Robson, who was 38 years old, and Terry M. Egan, who was 37 years old, both became Vice Presidents–Marketing. Robson worked out of the North Carolina office and Egan worked out of the Ohio office, but both Robson and Egan reported directly to Deeds. Philip H. Sauer, who was 48 years old, became Vice President–Product Development and

worked out of the Ohio office. Mike Hoban, who was 35 years old, became Vice President–Human Resources and worked out of the North Carolina office. Regina R. Brown, who was 50 years old, became the Vice President–Quality Assurance and worked out of the Ohio office. Richard G. Betts, who was 41 years old, became the Director of Manufacturing and worked out of the Ohio office.

At trial, Zimmer introduced management charts of Snyder and Patient Care, as of April 1, 1987, and a management chart of the new Patient Care after the consolidation. The Snyder management chart reflects that before the consolidation, five of the nine officers and managers at Snyder were more than 40 years of age. The Patient Care management chart reveals that before the consolidation, three of the eight officers and managers at Patient Care were 40 years of age or older. The new Patient Care management chart shows that after the consolidation, seven of seventeen officers and managers at the new Patient Care were over 40 years of age.[3] The management charts reflect, further, that Zimmer retained all of the Snyder officers and managers as employees of the new Patient Care and that Zimmer retained all of the officers and managers of Patient Care except for Teskey and the Plaintiffs.

## III. ZIMMER'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

To support their Motion for Judgment Notwithstanding the Verdict, Zimmer argues that the evidence was insufficient to support the jury's finding that Zimmer's discharge of the Plaintiffs was motivated by age. Zimmer contends that the Plaintiffs were required to prove, but failed to prove, that it was probable, not merely possible, that age was a determining factor in their terminations. Zimmer contends, further, that the Plaintiffs failed to present sufficient evidence to establish the requisite, discriminatory motivational element

through either direct or circumstantial evidence or under the *McDonnell–Douglas* proof scheme.

### A. The Applicable Law

Rule 50(b) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Not later than 10 days after entry of judgment, a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict; ... A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed.

F.R.Civ.P. 50(b).

In ruling on a motion for judgment notwithstanding the verdict, a court must view the evidence in the entire record in the light most favorable to the prevailing party, must give the prevailing party the benefit of all reasonable inferences from the facts, and must determine whether sufficient evidence exists in the record as a whole upon which a reasonable factfinder properly could return a verdict in favor of the prevailing party. *Herold v. Hajoca Corp.*, 864 F.2d 317, 319 (4th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989); *Wilhelm v. Blue Bell, Inc.*, 773 F.2d 1429, 1433 (4th Cir. 1985), *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *Whalen v.*

---

**3.** When Franko replaced Coonce on July 27, 1987, as the Manufacturing Controller and when Harvey replaced Hufziger on July 27, 1987, as the Vice President–Operations in North

Carolina, only six of the seventeen officers and managers of the new Patient Care were over 40 years of age.

**1314**

*Roanoke County Bd. of Supervisors,* 769 F.2d 221, 224 (4th Cir.1985), *rev'd on rehearing,* 797 F.2d 170 (1986). A court, however, must neither weigh the evidence nor assess the credibility of witnesses. *Herold,* 864 F.2d at 319. In determining the sufficiency of the evidence, a mere scintilla of evidence is insufficient to sustain a jury's verdict. *See Latimore v. University of North Carolina at Charlotte,* 669 F.Supp. 1345, 1346 (W.D.N.C.1987) (in ruling on motion for directed verdict, which requires application of same standard as motion for judgment notwithstanding verdict, court recognized that scintilla of evidence is not sufficient to allow case to proceed to jury), *aff'd,* 856 F.2d 186 (4th Cir.1988); *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989) (noting that mere scintilla of evidence fails to establish question for jury in ADEA cases).

The United States Court of Appeals for the Fourth Circuit has held that an ADEA plaintiff must establish the existence of three elements to prove a prima facie case:

> (a) [T]hat an employee covered by the [ADEA] (b) has suffered an unfavorable employment action by an employer covered by the [ADEA] (c) under circumstances in which the employee's "age was a determining factor" in the action in the sense that "but for" his employer's motive to discriminate against him because of his age, he would not [have suffered the action].

*Lovelace v. Sherwin–Williams Co.,* 681 F.2d 230, 238 (4th Cir.1982) (citing *Spagnuolo v. Whirlpool Corp.,* 641 F.2d 1109, 1112 (4th Cir.), *cert. denied,* 454 U.S. 860, 102 S.Ct. 316, 70 L.Ed.2d 158 (1981)). The parties concede, and the Court so finds, that the only element at issue in this case is the third or motivational element.

■ In successfully proving the motivational element, an ADEA plaintiff must present sufficient evidence to prove that age probably, not merely possibly, was a determining factor in the employer's employment decision. *Lovelace,* 681 F.2d at 241; *see Taylor v. Home Ins. Co.,* 777 F.2d 849, 854 (4th Cir.1985), *cert. denied,* 476 U.S. 1142, 106 S.Ct. 2249, 90 L.Ed.2d 695

(1986). This Court previously has stated that:

> Plaintiff's evidence must allow a factfinder to draw a reasonable inference that, more probably than not, age was a determining factor: if not for Defendant's bias against Plaintiff because of his age, he would not have been discharged.

*Wilson v. Popp Yarns Corp.,* 680 F.Supp. 208, 210 (W.D.N.C.1988) (citing *Lovelace,* 681 F.2d at 240–41). The Fourth Circuit, however, has advised courts that in ADEA cases,

> [D]etermination of motive is ordinarily a function within the province of the factfinder because so much depends on an assessment of the credibility of the witnesses. A finding of motive should not be set aside by the reviewing court unless the evidence clearly compels rejection.

*Taylor,* 777 F.2d at 854 (citations omitted). Several circuit courts have recognized that an ADEA plaintiff terminated in a corporate reorganization carries a greater burden of proof on the motivational element than an employee terminated under other circumstances. *See Simpson v. Midland–Ross Corp.,* 823 F.2d 937, 941 (6th Cir. 1987); *Ridenour v. Lawson Co.,* 791 F.2d 52, 57 (6th Cir.1986); *Holley v. Sanyo Mfg., Inc.,* 771 F.2d 1161, 1165–66 (8th Cir.1985); *Hedrick v. Hercules, Inc.,* 658 F.2d 1088, 1094 (5th Cir.1981). To meet the burden of proof in establishing the motivational element of an ADEA violation, a plaintiff may use either "ordinary principles of proof by any direct or indirect evidence relevant to and sufficiently probative of the issue" or the judicially created *McDonnell–Douglas* proof scheme. *Wilhelm,* 773 F.2d at 1432; *EEOC v. Western Elec. Co.,* 713 F.2d 1011, 1014 (4th Cir.1983); *Lovelace,* 681 F.2d at 239–41.

The Fourth Circuit has recognized that under the judicially created *McDonnell–Douglas* proof scheme, a plaintiff successfully must establish a prima facie case of discrimination by showing each of the following elements:

(1) [T]he plaintiff is in the protected age group; (2) the plaintiff was discharged or demoted; (3) at the time of discharge or demotion, the plaintiff was performing his job at a level that met his employer's legitimate expectations; and (4) following his discharge or demotion, the plaintiff was replaced by someone of comparable qualifications outside the protected class [or, in the case of a reduction-in-force,] some other evidence that the employer did not treat age neutrally.

*Western Elec.,* 713 F.2d at 1014; *see Goldberg v. B. Green & Co.,* 836 F.2d 845, 849 (4th Cir.1988). Once the plaintiff establishes a prima facie case, a rebuttable presumption arises that the employer unlawfully discriminated against the plaintiff. *Western Elec.,* 713 F.2d at 1014. The employer then must rebut the presumption by producing evidence showing that the plaintiff was discharged for a legitimate, nondiscriminatory reason. *Id.* The employer, however, does not need to prove the absence of a discriminatory motive, but merely must enunciate some legitimate reason for its action. *Id.* If the employer successfully carries its burden of production, the presumption favoring the plaintiff disappears. *Id.; see Fink v. Western Elec. Co.,* 708 F.2d 909, 915 (4th Cir.1983). The plaintiff then bears the burden of demonstrating that the reason proffered by the employer was pretextual or untrue, and this burden merges with the plaintiff's ultimate burden of persuasion on the motivational issue. *Western Elec.,* 713 F.2d at 1014.

■ In attempting to show the pretextual nature of the reasons proffered by the employer, the plaintiff should focus on the perception of the actual decision-maker. *Smith v. Flax,* 618 F.2d 1062, 1067 (4th Cir.1980); *see Gray v. New England Tel. & Tel. Co.,* 792 F.2d 251, 256 (1st Cir.1986). To successfully prove pretext, the plaintiff must establish, first, that the stated reason for the employment action was not the true reason and, second, that the real reason for the employment action was discrimination. *Dea v. Look,* 810 F.2d 12, 15 (1st Cir.1987); *White v. Vathally,* 732 F.2d 1037, 1043 (1st Cir.), *cert. denied,* 469 U.S. 933, 105 S.Ct.

331, 83 L.Ed.2d 267 (1984). The plaintiff, however, cannot show simply that the decision-maker made an unwise, incorrect, or unfair business decision. *Gray,* 792 F.2d at 255; *Cline v. Roadway Express, Inc.,* 689 F.2d 481, 487 n. 7 (4th Cir.1982).

### B. The Court's Discussion

■ The Court, first, will examine the direct and circumstantial evidence relied on by the Plaintiffs to prove an ADEA violation. The Plaintiffs, however, failed to produce any direct evidence of age discrimination. The Plaintiffs, instead, relied exclusively on circumstantial evidence in attempting to prove that Zimmer terminated them on account of their age. The circumstantial evidence relied on by the Plaintiffs to prove age discrimination essentially was that the Plaintiffs (and Teskey) were the oldest and highest-paid employees of Patient Care, that they—including Teskey—were the only officers of Patient Care over 40 years of age, that they—including Teskey—were the only officers of Patient Care discharged by Zimmer, that Zimmer retained the other officers of Patient Care, all of whom were under 40 years of age, and that Zimmer failed to find other employment within the organization for them.

After reviewing the applicable law and the relevant facts, the Court is of the opinion that the circumstantial evidence relied on by the Plaintiffs was insufficient to establish that the Plaintiffs' ages probably were a factor in Zimmer's decision to discharge them. First, the Court finds that the statistical evidence presented at trial fails to show that Zimmer used the Plaintiffs' ages as a determining factor in its decision to discharge them. In presenting statistics, the Plaintiffs argued that the relevant pool is the seven-member management team of Patient Care. Zimmer, on the other hand, argued that the relevant pool is the management teams of both Snyder and Patient Care. In reviewing the statistical evidence, the Court properly must focus on the persons affected by the consolidation of Patient Care and Snyder. *See Toth v. Square D Co.,* 712 F.Supp. 1231, 1239 (D.S.C.1989) (recognizing that

proper focus of statistical evidence introduced to prove age discrimination should be on evidence concerning all of employees affected by employer's actions). From Zimmer's exhibits, it is apparent that Zimmer did not discharge the Plaintiffs as part of an overall process to rid the new Patient Care of older employees. In fact, the average age of the new Patient Care management team (43.8 years) for both the North Carolina and Ohio operations was over three years higher than the average age of the Patient Care management team (40.1 years). Although the average age of the management team of the new Patient Care's North Carolina operations decreased (37.5 years), the average age decreased only slightly, less than one year, from the average age of Patient Care's previous management team (38.3 years).

Moreover, the Court finds that this statistical evidence, by itself, lacks sufficient probative value to prove a probability that the Plaintiffs' ages were a determining factor in Zimmer's decision to discharge them. This Court previously has acknowledged that in an ADEA case, a court rightly may consider statistics as circumstantial evidence of age discrimination, but must not accept the statistics uncritically without carefully considering all other relevant factors. *See Latimore,* 669 F.Supp. at 1352. This Court also has noted the relative uselessness of statistical evidence as circumstantial evidence if the Court does not have, or fails to consider, any additional information concerning the relative qualifications or background of the individuals. *Id.* In considering the probative value of statistics as circumstantial evidence of age discrimination, the Court must be mindful of Zimmer's dissatisfaction with the Plaintiffs' performance in the year before their discharges. The Plaintiffs' poor performance and Zimmer's dissatisfaction significantly weaken the probative value of the Plaintiffs' reliance on statistics as circumstantial evidence of age discrimination.

The Plaintiffs have argued that their reliance on Patient Care's seven-member management team was not to show the discriminatory impact of Zimmer's consolidation, but to show that Zimmer treated the Plaintiffs differently from the other members of Patient Care's management team who were similarly situated and under 40 years of age. The Plaintiffs' argument, however, is without merit. The Court properly must focus on the members of the management teams from both Patient Care and Snyder. A review of the Defendant's exhibits and the testimony at trial clearly shows that by failing either to retain the Plaintiffs on the new Patient Care's management team or to find other positions for them, Zimmer did not discriminate against the Plaintiffs on account of their ages. The evidence clearly reveals that upon consolidating Patient Care and Snyder, Zimmer retained numerous management team members over 40 years of age and numerous management team members under 40 years of age. This evidence undoubtedly shows that although choosing not to retain the Plaintiffs, Zimmer did not treat similarly situated employees differently because of their age.

In addition to relying on statistical evidence as circumstantial evidence to prove age discrimination, the Plaintiffs have attempted to prove through circumstantial evidence that Zimmer discharged them on account of their age by arguing essentially that upon consolidation of Patient Care with Snyder, Zimmer replaced the Plaintiffs with younger men. The Court, however, finds this argument to be without merit. The Court believes that Zimmer did not replace the Plaintiffs with younger men. The Court believes, instead, that in consolidating its two divisions, Zimmer eliminated the Plaintiffs' former positions and assigned their job duties to other employees on the management team of the new Patient Care. For instance, before the consolidation, Plaintiff Moran, as Vice President–Operations, had direct responsibility only for the production operations of Patient Care in North Carolina and was a second-level manager in North Carolina. Hufziger (and then Harvey), who held the position of Vice President–Operations in North Carolina, held the top position in North Carolina and had indirect responsibility for all of the functions at the new

Patient Care in North Carolina. Also, before the consolidation, Plaintiff Gries, as Vice President–Finance for Patient Care, obviously was a Vice President of the division and reported directly to the President of Patient Care. Neither Coonce nor his successor, Franko, as the Manufacturing Controller was an officer of the new Patient Care. The Manufacturing Controller also had fewer responsibilities than the Vice President–Finance. Moreover, as the Manufacturing Controller, Coonce (and Franko) reported to the Vice President–Controller, rather than directly to the President of the division.

Even assuming that Zimmer replaced the Plaintiffs, however, the Court believes that the circumstantial evidence was insufficient to establish that age was a determining factor in Zimmer's discharge of the Plaintiffs and subsequent replacement of them. The Fourth Circuit has recognized that the relative ages of an ADEA plaintiff and his replacement "have obvious relevance in assessing whether a factual inference of age discrimination is permissible." *Lovelace*, 681 F.2d at 242–43 n. 13. Assuming Zimmer replaced Plaintiff Gries, it replaced a 40–year old man initially with a 35–year old man, Coonce, and subsequently with a 37–year old man, Franko. Plaintiff Gries even concedes that the closeness of his age with the age of his replacement, by itself, is not strong evidence of age discrimination. *See* Plaintiffs' Brief in Opposition to Defendant's Motion for Judgment Notwithstanding the Verdict, *Gries v. Zimmer* (W.D.N.C. filed March 9, 1990) (C–C–87–577–P). The Court believes that the little difference in the ages of Plaintiff Gries and his replacement, whether Coonce or Franko, prohibits a reasonable inference that but for Plaintiff Gries' age, Zimmer would not have replaced him. The Court concludes, therefore, that no reasonable factfinder could infer that Plaintiff Gries' age was a determining factor in his discharge and subsequent replacement.

The Court also reaches the same conclusion in reference to Plaintiff Moran. Assuming Zimmer replaced Plaintiff Moran, it initially replaced him with a 58–year old man, Hufziger, and then subsequently with a 37–year old man, Harvey. Plaintiff Moran argued at trial and after trial that Zimmer's offer to Hufziger of a permanent position in North Carolina was a mere pretense. To support this argument, Plaintiff Moran contended that before Zimmer extended the offer to Hufziger, Plaintiff Moran's counsel had written Zimmer a letter essentially threatening Zimmer with an age discrimination suit if Zimmer did not reinstate Plaintiff Moran (hereafter "the Demand Letter"). The Court is of the opinion that the evidence at trial clearly was insufficient to allow a reasonable inference that Zimmer's offer to Hufziger was a sham and was tendered in an attempt to conceal arguably discriminatory treatment of Plaintiff Moran. *See La Montagne v. American Convenience Prod., Inc.*, 750 F.2d 1405, 1411 (7th Cir.1984) (rejecting plaintiff's theory that offer first to older replacement, who declined, and subsequent offer to much younger replacement was sham). The undisputed evidence at trial revealed that Zimmer authorized the permanent offer to Hufziger before the consolidation took place in April 1987, well over a month before Plaintiff Moran's counsel wrote the Demand Letter to Zimmer. Further, the evidence also revealed that Deeds, the President of the new Patient Care, did not even know of the Demand Letter. Moreover, no evidence exists to establish that Zimmer really did not want Hufziger to accept its offer or that Zimmer actually knew that Hufziger in fact would reject its offer. *See id.* (finding that factfinder could not reasonably infer that first offer to older replacement was sham because of doubt whether he would accept offer). Furthermore, no evidence exists to establish that the Demand Letter caused Zimmer's offer of a permanent position to Hufziger. For all of these reasons, the Court believes that if Zimmer replaced Plaintiff Moran, Hufziger was Plaintiff Moran's replacement and Zimmer's offer to Hufziger was not merely a pretense to conceal age discrimination. If Hufziger, who was 58, replaced Plaintiff Moran, who was 44, no reasonable factfinder could determine that Plaintiff Moran's age was a

determining factor in his discharge and replacement.

Even if Harvey, who was 37, rather than Hufziger, is considered to have replaced Plaintiff Moran, the Court believes that the little difference in the ages of Plaintiff Moran and Harvey prohibits a reasonable inference that but for Plaintiff Moran's age, Zimmer would not have replaced him. *See Lovelace,* 681 F.2d at 242–43 n. 13. Plaintiff Moran even concedes that the closeness of his age with the age of his replacement, by itself, is not strong evidence of age discrimination. *See* Plaintiffs' Brief in Opposition to Defendant's Motion for Judgment Notwithstanding the Verdict, *Moran v. Zimmer* (W.D.N.C. filed March 9, 1990) (C–C–87–576–P). The Court concludes, therefore, that no reasonable factfinder could infer that Plaintiff Moran's age was a determining factor in his discharge and subsequent replacement by Harvey.

Both at trial and after trial, the Plaintiffs also relied on the Plaintiffs' wages as circumstantial evidence to prove that Zimmer discharged them because of their ages. The Court finds no merit to the Plaintiffs' arguments and finds, instead, that a reasonable factfinder properly could not infer age discrimination simply from the fact that the Plaintiffs were two of the highest paid employees at Patient Care and were discharged by Zimmer. This Court previously has recognized that the belief that older employees cost employers more is "merely a truism." *Popp Yarns,* 680 F.Supp. at 212. This Court has found that when the evidence fails to establish an employer's refusal to consider any employees over a certain age because of a belief that all older employees were too expensive, an ADEA plaintiff has failed to meet its burden. *Id.* Other courts also have rejected an ADEA plaintiff's contention that a higher salary is directly related to seniority and, therefore, a function of age. *See Holt v. Gamewell Corp.,* 797 F.2d 36, 38 (1st Cir.1986) (noting that "seniority as a function of age is dependant upon the age at which the employee began to work for the company").

In the case now before the Court, the evidence clearly revealed that the Plaintiffs were two of the highest paid employees of Patient Care. The Plaintiffs failed to present any direct, statistical evidence establishing a direct correlation between either age or seniority and salary. The testimony at trial, however, clearly revealed that at the time of consolidation, other Zimmer employees had greater seniority than either of the Plaintiffs, but received less compensation. The evidence further revealed that in the consolidation, Zimmer elected to retain several older employees and discharge younger employees and that after the consolidation, the new Patient Care management team consisted of at least six managers over the age of forty. The Court believes that the evidence further revealed that Zimmer's determination of the Plaintiffs' salaries were based on their previous promotions and raises and on their status as officers of Patient Care. The Court believes that this evidence completely destroys the theory that age related directly to salary and that no reasonable factfinder properly could accept this theory or otherwise conclude that any decision based on wage also was based on age.

Having considered separately each type of circumstantial evidence, the Court concludes that none of the types of circumstantial evidence, taken by itself, sufficiently would lead a reasonable factfinder to infer that the Plaintiffs' ages were, more probably than not, a determining factor in their discharge. *See Popp Yarns,* 680 F.Supp. at 210. Moreover, the Court concludes that all of this circumstantial evidence, taken cumulatively and in combination with all of the other evidence in the record as a whole, is insufficient for a reasonable factfinder properly to return a verdict in favor of the Plaintiffs. *See Herold,* 864 F.2d at 319; *Wilhelm,* 773 F.2d at 1433. The Court concludes that the circumstantial evidence relied on by the Plaintiffs, taken cumulatively and in combination with all of the other evidence in the record as a whole, would lead a jury reasonably to conclude that age only was possibly, rather than was probably, a determining factor in Zimmer's discharge of the

Plaintiffs. *See Lovelace,* 681 F.2d at 241; *Taylor,* 777 F.2d at 854. The Court, therefore, must conclude that the Plaintiffs' failed to meet their burden of successfully establishing a violation of the ADEA using circumstantial evidence.

The Court next will consider whether the Plaintiffs met their burden of establishing the motivational element of an ADEA violation under the judicially created *McDonnell–Douglas* proof scheme. The Court seriously doubts that the Plaintiffs properly have established a prima facie case. The Court questions whether the Plaintiffs successfully established the third and fourth elements under the *McDonnell–Douglas* proof scheme. To establish the third element of a prima facie case, the Plaintiffs were required to prove that when discharged, they satisfactorily were performing their jobs and meeting Zimmer's legitimate expectations. *See Western Elec.,* 713 F.2d at 1014. To establish the fourth element of a prima facie case, the Plaintiffs were required to prove that they were replaced by people having comparable qualifications outside the protected class or show that because of the reduction-in-force nature of this case, the employer did not treat age neutrally. *Id.*

The Court believes that the Plaintiffs failed to prove the third element of a prima facie case of age discrimination. While it is true that the Plaintiffs through 1986 had received very favorable evaluations of their performance from Teskey, their direct superior at Patient Care, events occurring in 1986 led Davis to question the Plaintiffs' performance. Davis learned of an inventory discrepancy at Patient Care that started as a small discrepancy and grew over a period of several months to become a discrepancy of approximately $840,000. A newly installed computerized inventory system contributed to the inventory discrepancy. Upon learning of the inventory discrepancy, however, Davis was dissatisfied with Plaintiff Gries for his delay in report-

ing the growing discrepancy to upper level Zimmer management despite several opportunities to do so. Davis also lost confidence in Plaintiff Moran, who had indirect authority over the Patient Care operations in North Carolina, because of his perceived inadequate handling of the inventory discrepancy. After Davis learned of the inventory problems, his dissatisfaction with the Plaintiffs and their handling of the inventory discrepancy was no secret to the Plaintiffs. During 1986, Davis also learned of the internal conflicts, dissension, and problems at Patient Care because of the contrasting management styles of Plaintiff Moran and Plaintiff Gries.[4] Moreover, in January 1987, Davis commented on his dissatisfaction with the Plaintiffs on each of the Plaintiffs' performance evaluations. The Court concludes, accordingly, that the Plaintiffs failed to provide sufficient evidence establishing that their performance was meeting Zimmer's legitimate expectations.

The Court believes that the Plaintiffs also failed to prove the fourth element of a prima facie case. The Court previously has expressed its opinion that because of the consolidation of Patient Care with Snyder and the reorganization of the new Patient Care's management structure, Zimmer did not replace the Plaintiffs. The Court also already has expressed its opinion that because the management team of the new Patient Care consisted of numerous persons over 40 years of age, Zimmer treated age neutrally in selecting the members of the new Patient Care's management team. The Court concludes, accordingly, that the Plaintiffs failed to produce sufficient evidence to establish that they were replaced.

Assuming, however, that the Plaintiffs successfully established a prima facie case under the *McDonnell–Douglas* proof scheme, the Court believes that the Plaintiffs failed to establish that Zimmer's stated reasons for discharging them were pretextual. *Western Elec.,* 713 F.2d at 1014.

---

**4.** Two exhibits introduced at trial strengthen the reasonableness of Davis' perception of the internal problems at Patient Care. First, in April 1986, Plaintiff Gries wrote Teskey, his direct superior, a letter expressing the opinion that

Plaintiff Moran's management style caused grave problems at Patient Care. And, second, Plaintiff Gries wrote Davis a letter in February 1987 in which Plaintiff Gries essentially conceded the existence of numerous problems.

In justifying its discharge of the Plaintiffs, Zimmer stated two reasons: First, the consolidation of Patient Care with Snyder resulted in the elimination of the Plaintiffs' positions; and, second, Davis had lost confidence in the Plaintiffs and Teskey because of the internal tension at Patient Care and because of the Plaintiffs' handling of the inventory discrepancy in 1986. The Court is of the opinion that the Plaintiffs failed to bear their burden of proving that Zimmer's stated reasons for the Plaintiffs' discharges were not the true reasons and that the ultimate reason for their discharges in fact was their ages. *See Dea*, 810 F.2d at 15; *White*, 732 F.2d at 1043.

In trying to show that Zimmer's claimed elimination of the Plaintiffs' positions merely was a pretext, or cover, for age discrimination, the Plaintiffs attempted to show that the Plaintiffs were replaced. Again, the Court believes that the Plaintiffs were not replaced. The Court believes, instead, that Zimmer eliminated the Plaintiffs' positions in the management structure of the new Patient Care. The evidence clearly established that as early as June 1986, Davis considered consolidating Patient Care with another of Zimmer's divisions. As late as June 1986, Davis did not even know of any of the existing inventory problems at Patient Care. The fact that someone assumed the performance of some of the duties that each of the Plaintiffs performed at Patient Care necessarily does not lead to the conclusion that the Plaintiffs were replaced.

In trying to show that Zimmer's claimed loss of confidence merely was a pretext for age discrimination, the Plaintiffs attempted to show that Zimmer never informed the Plaintiffs that their poor performance was a reason for their discharges, that they always had received favorable performance evaluations, and that Davis received a suggestion to "rework" the Plaintiffs' recent evaluations. The Court believes that none of the Plaintiffs' attempts, considered either individually or collectively, sufficiently proved pretext.

First, although Davis never mentioned to the Plaintiffs at the time of their dis-

charges that their past performance was at issue, Davis failed to see any reason for informing the Plaintiffs of his opinion concerning their performance. When Davis arrived in North Carolina to announce the consolidation and the formation of the new Patient Care, he already had decided to discharge the Plaintiffs. Because of his decision to discharge the Plaintiffs, Davis believed that a discussion about their past performance would be neither productive for Zimmer nor beneficial to the Plaintiffs. Moreover, Davis wanted to avoid humiliating the Plaintiffs with comments regarding his own dissatisfaction with them and their poor performance.

Second, although the Plaintiffs always had received an effective rating, or better, on their performance evaluations, the Plaintiffs were aware that their superiors at both Patient Care and Zimmer believed their performance during 1986 was poorer than in previous years. In 1986, Teskey rated the Plaintiffs as "effective," rather than "totally effective" as in previous years. Davis also expressed on the Plaintiffs' 1986 evaluations his dissatisfaction with the Plaintiffs' performance during 1986. During 1986, Davis also had expressed his displeasure with the Plaintiffs' delay in reporting and correcting the inventory discrepancy.

And, third, although the Plaintiffs attempted to attribute an evil connotation to the suggestion that Davis "rework" the Plaintiffs' evaluations, such a connotation is not reasonable from the evidence. The evidence and the context of the term "rework," instead, clearly showed that the intent of the suggestion was for Zimmer to consider providing each of the Plaintiffs with a course of action to improve their performance. Because of his loss of confidence in the Plaintiffs, however, Davis elected to discharge the Plaintiffs, rather than to provide them with an opportunity to improve their performance and to undertake the leadership of the new Patient Care.

Based upon all of the above discussion, the Court concludes that the Plaintiffs have failed to produce sufficient evidence

under the *McDonnell–Douglas* proof scheme for a factfinder reasonably and properly to conclude that Zimmer discharged the Plaintiffs because of their ages. The Court is of the opinion that the Plaintiffs failed to produce sufficient evidence to establish a prima facie case. *See Western Elec.*, 713 F.2d at 1014. Assuming that the Plaintiffs could establish a prima facie case, the Court is of the opinion that the Plaintiffs failed to produce sufficient evidence for a factfinder reasonably and properly to conclude that Zimmer's stated reasons for discharging them were merely pretextual and that more probably than not, their ages were a determining factor in their discharge. *See Taylor*, 777 F.2d at 854; *Western Elec.*, 713 F.2d at 1014; *Lovelace*, 681 F.2d at 241.

In summary, the Court concludes that Zimmer is entitled to a judgment notwithstanding the verdict. The Court believes that the Plaintiffs failed to prove sufficiently that it was probable, not merely possible, that age was a determining factor in their discharge. The Court believes, further, that the Plaintiffs failed to present sufficient evidence to establish either through direct or circumstantial evidence or under the *McDonnell–Douglas* proof scheme that Zimmer's decision to discharge the Plaintiffs was motivated by their ages, which would constitute an illegal discriminatory motive. The insufficiency of the evidence presented at trial taken as a whole and in a light most favorable to the Plaintiffs compels the Court to reject the jury's finding on the motivational element and, thus, to reject the jury's finding of age discrimination. *See Taylor*, 777 F.2d at 854.

## IV. ZIMMER'S MOTION FOR A NEW TRIAL

In addition to moving for Judgment Notwithstanding the Verdict, Zimmer also has filed a Motion for a New Trial. To support its Motion, Zimmer argues that the jury verdict was against the clear weight of the evidence and, if upheld, would result in a miscarriage of justice. Zimmer also argues that the jury verdict was the result of compromise. Zimmer argues, finally, that

a new trial is necessary because the Court erred in instructing the jury on the issue of liability.

### A. The Applicable Law

Rule 50(c) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> If the motion for judgment notwithstanding the verdict, provided for in subdivision (b) of this rule, is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order thereon does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered.

F.R.Civ.P. 50(c).

Rule 59(a) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....

F.R.Civ.P. 59(a).

A court may order a new trial if it determines that the jury's verdict is against the clear weight of the evidence, if the jury verdict is the result of compromise, or if the court erred in giving or refusing to give instructions. *Wyatt v. Interstate & Ocean Transp. Co.*, 623 F.2d 888, 891–92 (4th Cir.1980) (recognizing need for new trial when verdict is against clear weight of evidence or when trial judge created substantial error in giving instructions); *Great Coastal Express, Inc. v. International Bhd. of Teamsters*, 511 F.2d 839, 846 (4th Cir.1975) (recognizing necessi-

ty for new trial when jury verdict was result of compromise), *cert. denied*, 425 U.S. 975, 96 S.Ct. 2176, 48 L.Ed.2d 799 (1976).

In considering whether the jury verdict is against the clear weight of the evidence and a new trial is necessary, the court may weigh the evidence and assess the credibility of witnesses. *Wilhelm*, 773 F.2d at 1433; *Wyatt*, 623 F.2d at 891–92. The trial judge, however, has a duty:

[T]o set aside a verdict and grant a new trial even though it is supported by substantial evidence, "if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false or will result in a miscarriage of justice ..."

*Wyatt*, 623 F.2d at 891–92; *see Aetna Casualty & Sur. Co. v. Yeatts*, 122 F.2d 350, 352–53 (4th Cir.1941). The Fourth Circuit has stated that in ruling on a motion for new trial, a trial judge should engage in a "comparison of opposing proofs." *Ellis v. International Playtex, Inc.*, 745 F.2d 292, 298 (4th Cir.1984).

In considering whether a jury has reached its verdict as a result of compromise and a new trial is necessary, the court must recognize that a presumption favoring the validity of a jury verdict exists if the verdict is the result of honest judgment. *Great Coastal Express*, 511 F.2d at 846; *City of Richmond v. Atlantic Co.*, 273 F.2d 902, 916 (4th Cir.1960). Courts, however, widely have disapproved of compromise verdicts. *Young v. International Paper Co.*, 322 F.2d 820, 823 (4th Cir.1963). A compromise verdict is a verdict in which the jury resolved its inability to determine unanimously the issue of liability by finding inadequate damages. *Mekdeci v. Merrell Nat'l Laboratories*, 711 F.2d 1510, 1513 (11th Cir.1983); *Spell v. McDaniel*, 604 F.Supp. 641, 651 (E.D.N.C.1985), *aff'd in part, vacated on other grounds, and remanded*, 824 F.2d 1380 (4th Cir.1987). A jury verdict awarding inadequate damages, in and of itself, however, necessarily does not signify a compromise verdict, but other evidence must exist to show that the inadequate monetary award resulted from an

impermissible compromise. *Mekdeci*, 711 F.2d at 1513; *Hadra v. Herman Blum Consulting Eng'rs*, 632 F.2d 1242, 1246 (5th Cir.1980), *cert. denied*, 451 U.S. 912, 101 S.Ct. 1983, 68 L.Ed.2d 301 (1981). Courts have recognized that when a jury returns a compromise verdict, a court should grant a new trial on both the liability issue and the damages issue. *See Skinner v. Total Petroleum, Inc.*, 859 F.2d 1439, 1445–46 (10th Cir.1988); *Mekdeci*, 711 F.2d at 1513; *Great Coastal Express*, 511 F.2d at 846; *Young*, 322 F.2d at 823. The Supreme Court has advised courts as follows:

Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without prejudice.

*Gasoline Prod. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931).

One appellate court wisely has acknowledged that courts do not ask a jury of its rationale for its findings and, therefore, only must guess at the manner in which the jury calculated the ultimate damage award. *National R.R. Passenger Corp. v. Koch Indus., Inc.*, 701 F.2d 108, 110 (10th Cir.1983). In considering whether a jury has reached its verdict by compromise, courts have considered several factors: (1) The strength of the evidence on the liability issue and the degree to which the parties contested the liability issue; (2) the relationship between the plaintiff and the defendant in terms of comparative sympathy; (3) the clarity of the jury instructions and the jury verdict form; (4) the circumstances surrounding jury deliberations, including the length and timing of jury deliberations; (5) the communication, in the form of questions, from the jury to the court during jury deliberations; (6) the adequacy of the jury award in light of the evidence on damages; and (7) the degree to which both parties objected to the jury verdict. *Mekdeci*, 711 F.2d at 1513–15; *National R.R.*, 701 F.2d at 110; *Lucas v. American Mfg. Co.*, 630 F.2d 291, 293–94

(5th Cir.1980); *Hatfield v. Seaboard Air Line R.R.*, 396 F.2d 721, 722–23 (5th Cir. 1968); *Spell,* 604 F.Supp. at 651.

█ A court also may order a new trial when the court created a substantial error in giving or refusing to give its instructions. *Wyatt,* 623 F.2d at 892; *Spell,* 604 F.Supp. at 649; *Diane Mfg. Co. v. Sheffield Indus.,* 514 F.Supp. 185, 186 (D.Fla.1981), *aff'd* 685 F.2d 1387 (11th Cir.1982). The court, however, should order a new trial for error in its instructions only when its instructions taken as a whole either would be misleading to the jury or inadequately informed the jury of the status of the law. *Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 1518 (Fed.Cir.), *cert. denied,* 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984); *Alloy Int'l Co. v. Hoover–NSK Bearing Co.,* 635 F.2d 1222, 1228 (7th Cir. 1980); *Bass v. International Bhd. of Boilermakers,* 630 F.2d 1058, 1062 (5th Cir. 1980).

*B. The Court's Discussion*

█ Because the Court has granted Zimmer's Motion for Judgment Notwithstanding the Verdict, the Court now must consider, and rule upon, Zimmer's Motion for a New Trial in accordance with Rule 50(c) of the Federal Rules of Civil Procedure. After carefully reviewing the evidence introduced at trial, the parties' legal arguments, and the applicable law, the Court believes that Zimmer's Motion for a New Trial should be conditionally granted in accordance with Rule 50(c) of the Federal Rules of Civil Procedure.

The Court believes that the jury's finding on the issue of age discrimination is against the clear weight of the evidence. In ruling on Zimmer's Motion for Judgment Notwithstanding the Verdict, the Court was required to view the evidence in a light most favorable to the Plaintiffs and give the Plaintiffs the benefit of all reasonable inferences from the facts in the record. *See Herold,* 864 F.2d at 319; *Wilhelm,* 773 F.2d at 1433; *Whalen,* 769 F.2d at 224. In ruling on Zimmer's Motion for a New Trial, however, the Court can weigh the evidence and engage in a comparison of the parties' opposing proofs. *See Wilhelm,* 773 F.2d at 1433; *Ellis,* 745 F.2d at 298. The standard applicable for ruling on Zimmer's Motion for a New Trial, therefore, is broader. The Court already has exhaustively reviewed the evidence introduced at trial and now will not reiterate its discussion. For the same reasons that the Court believed that the evidence in the record as a whole was insufficient to support the jury's verdict, the Court believes that the strength of the parties' opposing proofs clearly weighed in favor of Zimmer and a finding that it did not engage in age discrimination. The Court believes, further, that if allowed to stand, the jury's verdict would result in a miscarriage of justice.

Moreover, after considering the numerous factors used by other courts to evaluate the jury's verdict, the Court believes that the jury's award of damages was the result of an impermissible compromise. First, the Court believes that the Plaintiffs' circumstantial evidence leading to the inference of age discrimination was very weak. The Court also notes that the trial in January 1990 was the second jury trial of these cases. At the first trial in March 1989, the jury was unable to reach a unanimous verdict, and the Court declared a mistrial. Five of the six jurors had decided in favor of Zimmer. The Court acknowledges that both parties needed more time to present their evidence at the January 1990 trial than at the March 1989 trial and, consequently, that the parties likely presented additional evidence at the January 1990 trial. The Court thinks, nonetheless, that the nature of the deadlocked jury from the March 1989 trial supports the Court's belief concerning the weakness of the Plaintiffs' case for age discrimination. At both the March 1989 trial and the January 1990 trial, both the Plaintiffs and Zimmer hotly contested the liability issue in these cases.

Second, the Court believes that the arguments of the Plaintiffs' counsel at trial attempted to portray Zimmer as the unsympathetic employer who mistreated its former employees, Plaintiff Gries and Plaintiff Moran. The Plaintiffs' counsel argued

to the jury that the Plaintiffs, who had lost their jobs with Zimmer, were the sympathetic former employees combatting an enormous, thriving corporation capable of sustaining an award of damages. These arguments of the Plaintiffs, however, did not have any meaningful relationship to the merits of their case. Instead, these arguments concerning the financial differences between the Plaintiffs and Zimmer improperly attempted to evoke sympathy from the jury. *See Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir.1978) (recognizing the impropriety of appealing to jurors' sympathy by referring to financial disparity between parties). It is true that Zimmer depicted the Plaintiffs as bad employees, e.g. that Plaintiff Moran had an aggressive and combative managerial style and that Plaintiff Gries was unwilling to accept responsibility for problems existing with the financial records of Patient Care. This evidence, however, had a significant relationship to Zimmer's defenses at trial. Zimmer introduced this evidence to illustrate the serious inventory problem at Patient Care and to show the internal management problems at Patient Care, both of which led to Davis' growing loss of confidence in the Patient Care management team.

Third, the Court believes that its instructions to the jury and the jury verdict form clearly directed the jury to resolve the liability issue before considering the damages issue.

Fourth, the Court believes that the circumstances surrounding jury deliberations may have led to the jury reaching a compromise verdict. The parties needed seven days, from Wednesday, January 10, 1990, until Thursday, January 18, 1990, to present their evidence at trial. On Friday, January 19, 1990, the parties presented their closing arguments and the Court instructed the jury. The jury began deliberating late in the afternoon and deliberated for three and one-half hours in an attempt to resolve the six submitted issues. The final day for which the jury had been summoned for service coincidentally was Friday, January 19, 1990. The jurors, thus, received the case on a Friday late in the afternoon on the last day for which they had been summoned to serve. The Court believes that although the jury never communicated to the Court that it was deadlocked on any of the issues, the timing of deliberations was conducive to a compromise.

Fifth, the Court believes that it reasonably cannot infer a compromise verdict as a result of the communication from the jury to the Court during deliberations. The jury submitted only one question to the Court. Near the middle of its deliberations, the jury asked the Court a question regarding the calculation of a back-pay award. The jury's question did not contain any reference to the issue of liability or indication that it was troubled by the liability issue.

Sixth, the Court believes that the jury's damage award was inadequate in light of the evidence on damages. At trial, Zimmer's strategy during the presentation of evidence focused on the liability issue, not on the damages issue. During closing arguments, however, Zimmer made the argument that the Plaintiffs failed to mitigate their damages. The Court's instructions also contained an instruction concerning the Plaintiffs' duty to mitigate their damages. The Plaintiffs' evidence concerning their respective amounts of back pay, however, essentially was undisputed. The Plaintiffs' evidence regarding mitigation of damages also essentially was undisputed. The Plaintiffs testified to the great extent that they each had searched for, and had extreme difficulty locating, other comparable employment after their discharges from Patient Care. Nonetheless, the jury returned a verdict of exactly one-half of the amount that each Plaintiff sought in back pay.

Further, the Court believes one other factor regarding the jury's damage award clearly and unequivocally conveys that the jury's award was a compromise on the liability issue. As previously noted, the jury awarded each Plaintiff exactly fifty percent, to the very penny, of the damages sought in back pay. Plaintiff Moran was seeking $81,080.88 in back pay and received $40,540.44 from the jury. Plaintiff Gries

was seeking $111,702.21 in back pay and received $55,851.10 from the jury. Although the jury arguably reduced the back pay awards for a perceived failure to mitigate, each of the Plaintiffs had a separate and distinct post-discharge employment search and a separate and distinct post-discharge employment history. The jury, nevertheless, reduced each of the Plaintiffs' awards by the exact same percentage. The Court believes that the identical percentage reduction by the jury of the damages awarded to each Plaintiff, each of whom had different post-discharge employment records, is forcefully indicative of a compromise verdict.

And, finally, both parties have urged the Court not to accept the jury verdict. Zimmer has filed its Motion for Judgment Notwithstanding the Verdict and its Motion for a New Trial. The Plaintiffs have filed a Motion to Amend Judgment and for Judgment Notwithstanding the Verdict, and alternatively, for a New Trial urging the Court to increase the jury award or to give them a new trial solely on the issue of damages. As expected, both parties vehemently have contested all of the post-trial motions. Thus, neither party is satisfied with the result reached by the jury and is imposing on the Court to correct a perceived injustice.

Having reviewed each of the factors considered by other courts in (determining whether a jury verdict is a result of compromise, the Court believes that several factors persuasively lead to the reasonable and proper conclusion that the jury verdict was the result of compromise. To review summarily, the Plaintiffs' circumstantial evidence of age discrimination was very weak. The liability issue was hotly contested at trial. The Plaintiffs' counsel appealed to the jury's sympathy with arguments of the financial disparity between the parties. The jury deliberated late on a Friday afternoon, the last day of their jury service. The jury's damages award was inadequate in light of the evidence on damages, which was virtually undisputed. The jury reduced each of the Plaintiffs' damages award by the identical percentage, despite their differing post-discharge employment search and employment history. And, both parties evidently are dissatisfied with, and have urged the Court not to accept, the jury's award.

Finally, the Court believes that the claimed error in instructing the jury, if any, does not require a new trial. The Court believes that its charge to the jury, taken as a whole, clearly and accurately informed the jury of the law and the issues to be decided.

In summary, the Court concludes that Zimmer's Motion for a New Trial should be granted. The Court believes that two grounds exist to support its conclusion. The Court believes, first, that the jury's finding on the issue of age discrimination is against the clear weight of the evidence and that a judgment conforming to the jury's verdict would be a miscarriage of justice. The Court believes, second, that the jury's award of damages was the result of compromise. Because of the nature of these two grounds, the Court believes that a partial new trial would be prejudicial and that a new trial on all of the issues is appropriate and necessary. *See Gasoline Prod.*, 283 U.S. at 500, 51 S.Ct. at 515; *Great Coastal Express*, 511 F.2d at 846.

## V. THE PLAINTIFFS' MOTION TO AMEND JUDGMENT AND FOR JUDGMENT NOTWITHSTANDING THE VERDICT AND, ALTERNATIVELY, FOR A NEW TRIAL

The Plaintiffs have filed a Motion to Amend Judgment in which they have requested the Court to amend the previously entered Judgment to provide for Zimmer's reinstatement of the Plaintiffs, to award pre-judgment interest on any back-pay award, and to increase the amount of damages awarded by the jury. The Plaintiffs also have filed a Motion for Judgment Notwithstanding the Verdict in which they have requested the Court to set aside the jury's damage award and enter judgment for the amount of undisputed damages. The Plaintiffs have filed, alternatively, a Motion for a New Trial in which they seek a new trial solely on the damages issue.

The Court carefully has considered each of the Plaintiffs' Motions. As is readily apparent from even the most cursory review of the Plaintiffs' Motions, each of the Plaintiffs' Motions raises issues involving the relief to be afforded each of the Plaintiffs. The Plaintiffs' Motions, therefore, differ from Zimmer's Motions, which raised issues involving Zimmer's liability. Because the Court already has concluded that the Judgment previously entered in this matter should be set aside and that if that conclusion is reversed or vacated on appeal, a new trial is necessary, the Court does not believe that it exhaustively must discuss each of the Plaintiffs' Motions.

First, in reference to the Plaintiffs' Motion for Judgment Notwithstanding the Verdict, Rule 50(b) of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> [A] party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict.

F.R.Civ.P. 50(b). The language of Rule 50(b) unequivocally requires a party to make a motion for directed verdict as a condition precedent to making a motion for judgment notwithstanding the verdict. *See Aetna Casualty*, 122 F.2d at 352; *Wilson v. American Chain & Cable Co.*, 38 F.R.D. 72, 73 (E.D.Pa.1965).

The Court believes that the clear language of Rule 50(b) requires the Court to deny the Plaintiffs' Motion for Judgment Notwithstanding the Verdict, without considering the merits. In this case, the Plaintiffs failed to make a motion for directed verdict. The Plaintiffs' own failure to make a motion for directed verdict precludes the Court from considering its Motion for Judgment Notwithstanding the Verdict. The Court, thus, will deny the Plaintiffs' Motion for Judgment Notwithstanding the Verdict.

In reference to the Plaintiffs' Motion for a New Trial, the Supreme Court in *Gasoline Prod.* directed courts not to order a partial new trial "unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without prejudice." *Gasoline Prod.*, 283 U.S. at 500, 51 S.Ct. at 515. The Fourth Circuit has noted that a court should set aside a compromise verdict both on the issue of liability and on the issue of damages. *Great Coastal Express*, 511 F.2d at 846; *Schuerholz v. Roach*, 58 F.2d 32, 34 (4th Cir.), *cert. denied*, 287 U.S. 623, 53 S.Ct. 78, 77 L.Ed. 541 (1932). The Fourth Circuit reasoned that the compromise verdict "speaks with no greater authority on the one subject than on the other." *Id.* Several other federal circuit courts have reached a similar conclusion. *See Skinner*, 859 F.2d at 1445–46; *Mekdeci*, 711 F.2d at 1513; *Lucas*, 630 F.2d at 294; *Vizzini v. Ford Motor Co.*, 569 F.2d 754, 760 (3d Cir.1977).

The Court believes, therefore, that the Plaintiffs' Motion for a New Trial limited solely to the damages issue must be denied. The Court already has noted its opinion that the jury verdict was the result of compromise and has explained its reasoning. The Court believes that because of the finding of compromise, the parties should have a new trial on both the liability issue and the damages issue, rather than solely on the damages issue. *See Great Coastal Express*, 511 F.2d at 846; *Schuerholz*, 58 F.2d at 34. The Court, therefore, must deny the Plaintiffs' Motion for a New Trial.

Finally, the Court believes that the Plaintiffs' Motion to Amend Judgment should be denied. The Plaintiffs' Motion to Amend Judgment raises issues involving Zimmer's reinstatement of the Plaintiffs, an award of pre-judgment interest on any back-pay award, and the increase in the amount of the back pay awarded to the Plaintiffs. The Court believes that because of the Court's conclusion that a new trial might be necessary on the liability issue, it would be an inefficient use of the Court's resources and unnecessary to resolve these issues at this time.

## VI.  ORDER OF THE COURT

NOW, THEREFORE, IT IS ORDERED that (1) Zimmer's Motion for Judgment

Notwithstanding the Verdict be, and hereby is, GRANTED; (2) Zimmer's Motion for a New Trial on all of the issues be, and hereby is, CONDITIONALLY GRANTED in accordance with Rule 50(c) of the Federal Rules of Civil Procedure; (3) the Plaintiffs' Motion for Judgment Notwithstanding the Verdict be, and hereby is, DENIED; (4) the Plaintiffs' Motion for a New Trial solely on the issue of damages be, and hereby is, DENIED; and (5) the Plaintiffs' Motion to Amend Judgment be, and hereby is, DENIED.

The Court will enter a Final Judgment in these cases in accordance with this Memorandum of Decision and Order.