## LAW AND EQUITY COURT OF THE CITY OF RICHMOND

Pike Corp.

v.

Glascock et al.

December 12, 1961

Case No. A-4441

By JUDGE ALEX H. SANDS, JR.

This case has been submitted upon written stipulation of counsel, pleadings, and exhibits in the file, briefs of counsel heretofore filed, and oral argument of counsel.

### Facts

By lease dated August 26, 1957, Pike Corporation, plaintiff herein, hereinafter called "Lessor," leased the premises in question to "Estate of W. G. Leadbetter" and Hortense M. Leadbetter, hereinafter called "Leadbetter" (since Hortense M. Leadbetter's interest and that of the estate are the same), for a term of three years at a term rental of $8,100.00 (payable $225.00 monthly) to be used as a launderette. The stated term of the lease was from October 1, 1957, to September 30, 1960. Leadbetter agreed to deposit, and did deposit, with Lessor $450.00 at the date of execution of the lease as security for payment of rent, such deposit to be returned to Leadbetter at the expiration of the lease or, at option of Leadbetter, to be applied to the payment of the last two monthly rental installments under the lease.

At a time subsequent to the consummation of the lease, Leadbetter assigned the lease to Louis Colman, hereinafter

called "Colman," in the body of which assignment lessee stated that her responsibility under the lease was understood to extend until its expiration date, i.e., September 30, 1960. This assignment, appearing upon the back of the lease, bears no date nor does the stipulation show such date, although it was to take effect February 24, 1959. Either contemporaneously with or subsequent to this assignment, Lessor, on March 3, 1959, entered into an agreement in writing with Colman, also appearing upon the back of the lease extending the terminal date of the lease from September 30, 1960, to April 30, 1962. At the same time, March 3, 1959, Lessor took from Colman a so-called "security deposit" for $225.00. This extension was with the knowledge of Leadbetter (Stipulation, para. 5).

Subsequent to this March 3, 1959, transaction, and again by an undated instrument, Colman assigned the lease to Raymond C. Morris, hereinafter called "Morris," such assignment to take effect December 30, 1959. This assignment was without the knowledge of Leadbetter though she later acquired knowledge of its existence (Stipulation, para. 6).

On April 10, 1959, Lessor returned to Leadbetter the $450.00 "security deposit" which she had made at the time that the lease was originally entered into.

Rent upon the premises for June, July, and August, 1960, being in arrears, Lessor sued Leadbetter, Morris, and Colman for recovery thereof. Morris and Colman have both been adjudicated bankrupt.

### Issues

There are but two issues involved:

(a) Is Leadbetter liable for the three months' rent which is in arrears?

(b) If she is so liable, is she entitled to have the $225.00 "security deposit" made by Colman applied thereto?

### (a) Liability of Leadbetter under Original Lease

If the lease entered into between Lessor and Leadbetter on August 26, 1957, was in existence at the time the arrearages in rent accrued, Leadbetter is necessarily liable

thereunder for the rent, and all points in issue must be decided in favor of the Lessor plaintiff.

It is well established that assignment of a lease by the lessee does not absolve the lessee of his responsibility for compliance with all covenants therein, including that to pay the stipulated rental, and this is true regardless of whether or not the Lessor accepts the assignee as tenant. *Farmers' Bank v. Mutual Ass'n. Society*, 31 Va. (4 Leigh) 69 (1832); Taylor's Landlord and Tenant (9th ed.), vol. 2, page 16, sec. 438.

Nor does such assignment and acceptance thereof by the Lessor constitute a novation as is claimed by Leadbetter, and upon default, the Lessor can sue either tenant, assignee, or both. 11 *Mich. Jur.* page 736, sec. 58; *Kanawha-Gauley Coal, etc. Co. v. Sharp*, 73 W. Va. 427. This would be doubly true in this case where Leadbetter, as a part of the assignment to Colman expressly agreed to remain responsible for the rent for the balance of the term of the lease.

These rules are, of course, predicated upon the concept that the privity between landlord and tenant is twofold, that of contract and that of estate, and that while privity of estate ceases upon entry by the assignee, privity of contract upon the covenants as between landlord and tenant continue until termination of the period of the lease. *Powell v. Orphanage*, 148 Va. 331 (1927).

Nor is the defendant Leadbetter's contention sound that *quoad* the original lease, Leadbetter's position changed to that of surety upon assignment to Colman. While there are to be found some loose expressions to this effect, the better rule seems to be that this situation applies only between lessee and lessor. Compare *Gholson v. Savin* (Ohio), 31 N.E.2d 858, with *Gerber v. Pecht*, 15 N.J. 29, 104 A.2d 41. This, then, being true, there was no relationship of principal and surety, *quoad* Leadbetter and Lessor, created under the original lease by the assignment to Colman. If, therefore, suit properly lies against Leadbetter under the original lease, there is no theory under which Lessor's discretionary application of the $225.00 "security deposit" could be restricted.

But are we dealing with the original lease at all? The term of the original lease was from October 1, 1957, to September 30, 1960. The agreement entered into between

Lessor and Colman on March 3, 1959, extending the terminal date to April 30, 1962, constituted a new lease. *Cooke v. Wise,* 13 Va. (3 Hen. & M.) 463 (1809); *Prestons v. McCall,* 48 Va. (7 Gratt.) 121 (1850); 2 Taylor's Landlord & Tenant, sec. 507, page 102. The original term was surrendered thereby, and a new lease between Colman and Lessor to terminate April 30, 1962, came into existence. This effected, as to Leadbetter, a surrender of the original lease by operation of law. 2 Taylor's Landlord and Tenant, pages 101-109, secs. 507 through 512, inclusive. The fact that this so-called "extension" (which was necessarily a new lease) was done with Leadbetter's knowledge makes no difference, for there is no allegation that she ever became a party to the lease controlled by the April 30 terminal date.

This is the identical situation dealt with in *Cooke v. Wise,* 13 Va. (3 Hen. & M.) 463 (1809), except that there the Court was dealing with a *sublease* rather than an assignment. In the *Wise* case, Wise leased to Cooke for a term of five years. Cooke then (verbally) demised the premises to McRae & Co. for the balance of the five-year term. McRae then agreed to let Wise rent to anyone he chose for the balance of the five-year period, all of this being under the *original lease.* Wise then rented to Groverman *for a period beyond the five-year terminal date.* Upon default in rents, Wise sued Cooke for rent in arrears up to the terminal date under the original lease. The Court permitted recovery but upon the ground that the transaction between Cooke and McRae Co., being *verbal,* was *not* an assignment but only a sublease under Cooke and, as an under-lessee, *cannot* surrender to a landlord the tenant's lease (2 Taylor's L & T, para. 508), which is what McRae tried to do, no surrender was effected. The Court held, however, that had the Cooke to McRae deal been an *assignment,* then the extension of the terminal date by Wise to Groverman with McRae's consent for a period beyond the original terminal date would have constituted a surrender of the original lease and a release of Cooke from liability for rents thereunder. The opinion of the lower court was reversed only as to the question of interest (not involved in the case at bar), and the effect was to adopt the ruling of the lower court upon the other issues. (See statement of Judge Roane in the review of

the case in 3 Hen. & M. at page 492). The court had there said:

> If it were an assignment, the agreement between McRae and the plaintiff (landlord), and the subsequent lease from the plaintiff to Groverman, would operate as a surrender of the premises to the plaintiff (landlord) and consequently discharge the defendant (tenant) from any liability to him.

It is accordingly the court's view that the changing and extending of the lease term between Lessor and Colman with Leadbetter's consent effected a surrender by Leadbetter to Lessor of the original lease by operation of law. The acts of the parties are, moreover, consistent with this view for not only (a) did Lessor look to the new assignees for payment of rent from the date of the first assignment on but (b) required a "security deposit" from Colman at the time the lease term was extended and (c) returned Leadbetter's "security deposit" almost immediately after effecting the new agreement with Colman. Leadbetter is, therefore, not liable under the lease for any rents accruing after March 3, 1959.

### (b) Assumption of Liability by Leadbetter

Leadbetter's liability if at all, then, is by virtue of her undertaking in the assignment to Colman that "*it being understood and agreed that my responsibility does not cease until the expiration of this lease on September 30, 1960.*"

But this undertaking meant nothing as it was merely a statement of her existing liability, for the assignment of the lease to Colman did *not* as above pointed out, relieve her in any way. This statement, therefore, was merely a reaffirmance of a liability which she already had *under the original lease* and terminated when the original lease was surrendered on March 3, 1959, as above pointed out. The duration of this responsibility was by its terms "until the expiration of this lease" which was, by operation of law, effected on March 3rd.

### (c) Liability as Surety

But let's assume that by some stretch of imagination it were true that the above responsibility assumed in the Leadbetter-Colman assignment did not terminate with the surrender of the original lease. In such case, it might be urged that the voluntary undertaking of responsibility above discussed under (b) constituted a contract of guaranty between Leadbetter and Lessor under which Leadbetter, though not a party to the new lease between Lessor and Colman, guaranteed the performance of Colman thereunder until September 30, 1960. In such case, Leadbetter, being only a surety as to Lessor, would have been relieved by any modification in the basic nature of the agreement guaranteed (the Lessor-Colman lease). Leadbetter, not being a compensated surety, under the circumstances, would not have to show prejudice resulting from the modification but only that it was not of a sort actually beneficial to her. See Restatement of the Law of Security, chap. 5, sec. 128, page 340. That the assignment by Colman to Morris constituted a change in the undertaking guaranteed by Leadbetter is obvious. The fact that Morris may have been a better or a worse risk than Colman is immaterial. The important fact is that Leadbetter's undertaking contemplated Colman as a tenant and not another. She might have had confidence in Colman's integrity and assumed that he would not remove fixtures and equipment from the premises to which she may have looked for security and not reposed the same confidence in a stranger. There could be listed a plethora of reasons why she preferred the principal whom she had underwritten rather than a stranger. Suffice it to say the assignment of the lease to Morris was a modification of the undertaking which she had underwritten and was certainly not one of a nature that it could only be beneficial to Leadbetter. Even, therefore, were she a guarantor of the new lease, which is not believed to be the case for reasons assigned under (b) *supra*, she would have been released by the assignment to Morris without her consent.

For the above reasons, judgment is for the defendant Leadbetter.