178

## CIRCUIT COURT OF FAIRFAX COUNTY

9625 Lee Highway, L.L.C.

v.

Virginia Garden
Restaurants, L.L.C., et al.

February 1, 2002

Case No. (Law) 198835

BY JUDGE ARTHUR B. VIEREGG

This unlawful detainer action was initiated by 9625 Lee Highway, L.L.C., landlord, the owners of certain commercial property located in Fairfax County, Virginia, against Virginia Garden Restaurants, L.L.C., *et al.* in the General District Court of Fairfax County.[1] The action was subsequently removed to this Court and came before me for trial *ore tenus* on December 12, 2001. At the conclusion of the Landlord's case-in-chief, Tenant successfully moved to strike the Landlord's evidence. An order dismissing Landlord's action was entered on December 12, 2001. Landlord thereafter filed a motion for reconsideration. Subsequently, two orders were successively entered staying the final order so that I might consider Landlord's reconsideration motion. I directed Tenant to file a responsive brief and Landlord a reply. After reviewing the briefs filed, I am prepared to rule.

---

[1] Among the issues involved in this case is whether or not Virginia Gardens Restaurants, L.L.C., properly assigned *its interests in the leasehold property* to other related entities also named as defendants. This issue, however, is unrelated to defendants' motion to strike. Hence, Virginia Gardens Restaurants, L.L.C., and the other defendants shall collectively be referred to as "Tenant."

The facts are reasonably straightforward. By lease dated August 27, 1982, Landlord leased to the Howard Johnson Company ("HoJo") real property located on Lee Highway near Fairfax Circle in Fairfax County, Virginia ("Lease"). The Lease provided for a lease term of twenty-one years plus the option of extending the original lease for a period of five years, and a further option to extend for five years for three additional periods. HoJo was accorded the right to assign its leasehold rights but in the event of such an assignment remained liable for performance of the Lease terms. In the Lease, the parties entered into the following notice provision that is the crux of the issues under consideration:

> After any assignment of Tenant's interest in this Lease in which Tenant *shall remain liable*, Landlord shall not exercise any rights or remedies under this Lease on account of any default, *unless Landlord shall give notice to the Tenant named herein*, as well as the tenant in possession, of such default and the opportunity to cure the same within the period of time after such notice provided in this Section. . . .

Pl. Ex. 3, § 13.d. (emphasis added).

Landlord proved that HoJo assigned the Lease to The Ground Round, Inc. ("Ground Round"), Pl. Ex. 4; that Ground Round, Inc., assigned the lease to Apple South, Inc., Pl. Ex. 5; that Avado Brands, Inc. ("Avado"), formerly known as Apple South, Inc., assigned the lease to Tenant. Pursuant to the terms of each of these assignments, the assignee assumed the assignor's obligations to perform the Lease.

In connection with the assignment from Avado to the Tenant, Landlord introduced a document entitled "Landlord/Lessor's Estoppel Agreement" ("Estoppel Certificate"). Pl. Ex. 6. That Certificate was addressed to Avado and Tenant and was signed by Landlord but not by either Avado or Tenant. In the Certificate, Landlord purported to release Avado from its obligations and liabilities under the Lease. The Certificate was not under seal and does not evince promises by either Avado or Tenant to Landlord or to one another.

Landlord's evidence at trial made out a *prime facie* case that Tenant had breached certain rent and insurance provisions of the Lease and that Landlord had therefore terminated the lease. However, Landlord offered no evidence it had furnished HoJo with § 13.d notice of the Tenant's default prior to terminating the Lease. I found that Landlord had a duty under the Lease to afford the § 13.d notice to HoJo as a condition precedent to termination of the Lease, and I granted Tenant's motion to strike on account of Landlord's failure to comply with that notice provision.

## II. *Issues Before the Court*

There are two issues framed by Landlord's motion for reconsideration.

1. Did Landlord introduce sufficient evidence to demonstrate that HoJo was discharged from its contractual liability pursuant to the Lease terms as a consequence of Landlord's execution and delivery of the Estoppel Certificate, so that Landlord was thereafter excused from giving HoJo the § 13.d notice of Tenant's default?

2. If Landlord has not proved that HoJo's Lease obligations were discharged by Landlord's execution and delivery of the Estoppel Certificate and, if HoJo was entitled to § 13.d notice of Tenant's default before termination of the Lease, did Tenant have *standing* to contest Landlord's termination of the Lease on the grounds that HoJo had not been afforded such § 13.d notice of Tenant's default?

These issues will be addressed in the following analysis.

## III. *Analysis*

### A. *Proof of the Discharge of HoJo*

Paragraph 13.d expressly requires Landlord to furnish notice to HoJo of an assignee's default *only if* HoJo remained liable to perform the Lease conditions. Accordingly, Landlord had the burden of proving the discharge of HoJo from liability under the Lease.

Landlord's principal argument is that HoJo was discharged from liability when Landlord executed the Estoppel Certificate purporting to release Avado from liability. Landlord argues that in connection with HoJo's assignment of the Lease to Ground Round, and, in connection with each assignment, the assignee became the principal obligor to perform the Lease obligations and the assignor became merely a surety for performance of those obligations. From these precepts, Landlord argues that a release of an assignee constitutes a release of its immediate and remote sureties (*i.e.* earlier assignees). Tenant persuasively argues that this suretyship analysis is inconsistent with well-recognized principles of Virginia law relating to the assignment of leases. First, the mere assignment of a lease does not absolve the lessee of its obligation to perform the conditions of the lease. Second, while *vis-a-vis* its assignee, an assigning lessee may be secondarily liable, the lessor has a direct right of action against the original lessee on account of its privity of contract with the lessee; and it has a direct right of action against later assignees on

account of its privity of estate with them. *Jones v. Dokos Enterprises, Inc.*, 233 Va. 555, 557 (1987); *in accord, Tennison v. Knapp*, 64 S.W.2d 1071, 1073 (1933); 49 Am. Jur. 2d, *Landlord Tenant*, § 1123 (1995).

However, while I find Landlord's suretyship argument unpersuasive, an effective release of an assignee may nevertheless discharge the original assignor-lessee pursuant to a slightly different analysis. One commentator discussing the continuing liability of an assigning lessee to its lessor states as follows:

> A tenant does not relieve himself of liability by assigning his lease. The assignee also acquires a liability under the lease, either under privity of estate or privity of contract, or both. . . . Subsequent assignees come under a similar assignee's liability. As between successive assignees the primary liability is on the last assignee. Next in priority of liability is his immediate assignor, etc. The landlord may enforce his rights against any or all parties liable. Inasmuch as this includes a right by landlord to recover against the original tenant, in disregard of all others, the tenant remains at all times a primary obligor. In this respect the original tenant is not, strictly speaking, a surety.

> However, there is, as mentioned, an order of priority between the original tenant and assignees, which is reflected in rights to recover against those higher on the ladder of liability. *If a landlord interferes with this right-over he may lose his rights against the original tenant or somebody who is lower on the ladder than the assignee with whom the landlord has dealt.*

Milton R. Friedman, *Friedman on Leases* § 7.502, at 397-98 (4th ed. 1997) (emphasis added); see also 49 Am. Jur. 2d, *Landlord Tenant*, § 1127 (1995).

From the foregoing, I conclude that while Landlord's suretyship theories are too facile, if its release of Avado would interfere with HoJo's and Ground Round's rights-over against Avado, those assignors might have been discharged. As Friedman also points out:

> Regardless of the precise analysis of the theories by which the lessee may be relieved of liability by an assignment, the principle is clear that an agreement between the lessor and the assignee *materially varying the terms of the original lease will on one theory or another result in the termination of the lessee's covenant to pay rent.*

Friedman § 7.502, at 397-98, n. 2 (emphasis added). Indeed, Tenant cites *Pike Corp. v. Glascock*, 17 Va. Cir. 447 (1961), a well-reasoned decision consistent with Friedman's analysis. In *Pike Corp.*, Judge Sands found the lessee-

assignor discharged when the landlord extended the term of the lease without the agreement of the lessee-assignor. Based on the authorities cited by the parties, it is unclear that Landlord's putative release of Avado would either vitiate HoJo's right-over against Ground Round or Ground Round's right over against Avado. It is further unclear that such a release materially varied the terms of the Lease. Accordingly, and because I conclude that Landlord has otherwise failed to prove a release of Avado, I will not attempt to answer these questions that have not been addressed by the parties.

I find that Landlord's introduction of the Estoppel Certificate at trial was insufficient to prove the release of Avado and, therefore, was insufficient to prove the discharge of HoJo. Proof of a release requires either proof of a release under seal, *Georgetown v. Reynolds*, 161 Va. 164 (1933), or proof of an agreement supported by consideration. *Econo Lodges of America, Inc. v. Norcross Econo Lodge, Ltd.*, 764 F. Supp. 396 (W.D. N.C., 1991) (applying Virginia law). The face of the Estoppel Certificate demonstrates that it was not a sealed instrument. Nor does it disclose that the release language was supported by consideration. The Certificate was signed only by the Landlord but not by either Avado or the Tenant. Further, the Certificate fails to demonstrate that the release was furnished by the Landlord in exchange for promises or acts by those parties. While Landlord might have introduced evidence showing that the Estoppel Certificate was in fact delivered as part of a broader agreement pursuant to which the release was signed and delivered in consideration for Avado's assignment of the Lease to Tenant, evidence of such a broader agreement was not presented. Accordingly, Landlord failed to sustain its burden to prove either that Avado was released by the Estoppel Certificate or that HoJo was discharged from its obligations to Landlord pursuant to the Lease. Therefore, Landlord had a continuing duty to afford HoJo ¶ 13.d notice that Tenant had defaulted on the lease.

*B. Did Tenant Have Standing to Contest Landlord's Termination of the Lease on Account of Landlord's Failure to Afford HoJo the ¶ 13.d Notice of Tenant's Default?*

The dispositive issue therefore becomes whether or not Tenant had standing to defend Landlord's right to terminate the lease on account of Landlord's failure to afford ¶ 13.d notice to HoJo. For the reasons that follow, I conclude Tenant did not have such standing.

The ¶ 13.d notice provision was a personal covenant intended by the original parties of the lease to benefit HoJo, and it did not run with the land so

as to benefit HoJo's assignees.[2] This conclusion is confirmed by basic rules of statutory construction. First, the clause requires notice to the "tenant named herein," a plain reference only to HoJo as opposed to its assignees otherwise included under the more general term, "Tenant." Second, this interpretation is consistent with the very argument made by Tenant above. HoJo remained in privity of contract with Landlord even though its privity of estate had been terminated by assignment. Under such circumstances, the ¶ 13.d notice was required to enable HoJo recourse to the leasehold premises by curing a lease default of an assignee *so long as it remained liable under the Lease.* Since it is a personal covenant not entered into for Tenant's benefit, the Tenant may not defend its own defaults based on HoJo's personal rights. "[A] personal covenant creates a personal obligation or right enforceable at law only between the original covenanting parties. . . ." *See* 20 Am. Jur. 2d, *Covenants,* § 12 (1995).

At one point in its papers, Tenant appears to argue that this result will eventuate in HoJo's loss of *its* rights to regain the property in the event of a default.[3] It is apparent Landlord breached its obligation to HoJo to afford it ¶ 13.d notice of an assignee's default in order that HoJo could insulate itself from liability under the lease. Having failed to afford such notice to HoJo, Landlord presumably may not hereafter attempt to establish such liability against HoJo. Finally, moreover, Landlord appears to be judicially estopped from establishing such liability, for Landlord would be required to assert a position in direct conflict with the position taken in the present case. *Church v. Commonwealth,* 48 Va. Cir. 376 (Richmond 1999); *Smith v. Settle,* 254 Va. 348 (1997).

---

[2] A personal covenant is distinguishable from a covenant that "runs with the land." Covenants contained in a lease are said to run with the land when "they are of such character that the benefits and burdens thereof pass with the land to the assignee, into whosoever hands the land may come." *Burton v. Chesapeake Box and Lumber Corp., etc.,* 190 Va. 755 (1950).

[3] To the extent that Tenant is concerned that this result would cause HoJo to lose its rights, it should be noted that both Landlord and Tenant might have sought to join HoJo, but failed to do so.

*Conclusion*

For the foregoing reasons, this Court will vacate its order granting the motion to strike.